# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, et al., | |
| *Plaintiffs*, | Civil No. 3:20-cv-0374 |
| v. | JUDGE RICHARDSON |
| TRE HARGETT, et al., | MAGISTRATE JUDGE FRENSLEY |
| *Defendants*. | |

## RESPONSE TO COURT ORDER OF AUGUST 6, 2020

On August 6, 2020, in light of the Tennessee Supreme Court issuing its decision in the *Fisher v. Hargett* (No. 2020-00831-SC-RDM-CV) and *Lay v. Goins* (No. M2020-00832-SC-RDM-CV) cases (collectively the "*Fisher* opinion"), this Court ordered the Plaintiffs to "advise the Court: (a) of any changes to the scope of the relief they are requesting via the Motion; (b) in at least general terms of any changes to their asserted rationale for the granting of the relief requested in the Motion; and (c) whether they request more time (and if so, how much time) to advise the Court in more detail as to any changed asserted rationale for the granting of the relief requested in the Motion." Dkt. No. 60.

Plaintiffs response to the Court's order is included herein, and additional time to respond is not requested. As explained below, the *Fisher* opinion largely confirms and magnifies the necessity of the relief requested by Plaintiffs on their claims challenging the bar on absentee ballot request dissemination and the lack of notice and cure procedures in the State's signature matching process. As to Plaintiffs' claim challenging the first-time voter restriction, the *Fisher* opinion clarifies the scope of the relief Plaintiffs seek and otherwise supports Plaintiffs' argument that, for

1

first-time voters who are otherwise eligible to vote by mail under Tennessee law, an unnecessary restriction on their ability to do so imposes a heavy burden on their right to vote.

## I. The *Fisher* Holding

Prior to the filing of this case and the *Fisher* and *Lay* cases, the State had narrowly interpreted its absentee voting Eligibility Criteria, *see* Tenn. Code § 2-6-201, to *exclude* individuals under the age of 60 who "have underlying medical or health conditions which render them more susceptible to contracting COVID-19 or at greater risk should they contract it ('persons with special vulnerability to COVID-19'), as well as those who are caretakers for persons with special vulnerability to COVID-19." *Fisher* Opinion at 1–2. But between the chancery court's issuance of its injunction and oral argument at the Tennessee Supreme Court, the State—through an Attorney General's Opinion—finally acknowledged the severity of the COVID-19 crisis, noting that the virus is "surging," "spreads very easily," and that "[b]ecause there is currently no vaccine, cure, or proven effective treatment for COVID-19, the best way to prevent illness is to avoid being exposed to the virus." *See Fisher* Opinion at 4–5 (quoting Op. Tenn. Att'y Gen. No. 20-14 at *1–2 (July 24, 2020)). Thus, at oral argument before the Tennessee Supreme Court, the State conceded for the first time that persons with special vulnerability to COVID-19 and their caretakers "already are eligible to vote absentee by mail" under Tennessee law. *Id.* at 2.

In light of the State's new concession permitting voters with special vulnerability to COVID-19 and their caretakers to vote by mail, the Tennessee Supreme Court vacated the trial court's injunction, and instead "instruct[ed] the State to ensure that appropriate guidance, consistent with the State's acknowledged interpretation, is provided to Tennessee registered voters with respect to the eligibility of such persons to vote absentee by mail in advance of the November 2020 election." *Id.* at 2. In so doing, the Tennessee Supreme Court confirmed that a wider pool of

voters would remain eligible to vote by mail this November than had been eligible in any prior election, with the exception of the just-passed August 2020 election. With respect to those remaining individuals who continued to lack a statutory right to vote by mail even under the State's new interpretation of the law, the Tennessee Supreme Court declined to extend relief, finding that the burden on their right to vote was "moderate," and outweighed by the State's justifications for imposing it. *See id.* at 27–29.

## II. The Effect of the *Fisher* Opinion on Plaintiffs' Claims Challenging the Bar on Absentee Ballot Request Dissemination and the Signature Matching Procedures

Plaintiffs' claim respecting the statutory bar on the unsolicited distribution of absentee ballot requests, *see* Tenn. Code § 2-6-202(c)(4), relates to how Organizational Plaintiffs can communicate with already eligible absentee voters. *See* Dkt. No. 39, Pls.' Am. Compl., at ¶¶ 52–58, 77–82. The claims related to the lack of notice and cure protections for rejected absentee ballots similarly relate to whether Organizational Plaintiffs' absentee-eligible members will have their vote counted when they vote by mail. *See id.* at 59–65, 83–91. The *Fisher* Opinion does not affect Plaintiffs' requested relief for either claim.

However, the *Fisher* Opinion does confirm the importance of each of Plaintiffs' claims. In effect, the *Fisher* Opinion affirms that the pool of absentee-eligible voters this election cycle will be larger than in past cycles. *See* Dkt. No. 40–3, Reingold Decl. ¶ 9 (noting that approximately 32 percent of Tennessee adults under the age of 65 have a pre-existing condition that would render them vulnerable to COVID-19). Organizational Plaintiffs must be able to effectively communicate with such voters—including many who will be voting by mail for the first time—about their right to vote by mail, and to help facilitate their ability to do so. *See* Dkt. No. 41, Memo ISO Pls.' Mot. Preliminary Injunction ("Mot.") at 21–22. Similarly, because of the likely large number of absentee voters, it follows that the State's failure to provide notice and cure procedures to voters

3

of rejected absentee ballots only increases the risk of erroneous deprivation of the right to vote to a broader share of the electorate. *See id.* at 33–36; *see also* Dkt. No. 54, Pls.' Reply at 17–21.

### III. The Effect of the *Fisher* Opinion on Plaintiffs' Claim Challenging the First-Time Voter Restriction

With respect to their first-time voter claim, Plaintiffs requested that the Court enjoin the first-time voter restriction as to any first-time voter who is otherwise eligible to vote by mail under Tennessee law. *See* Mot. at 21 (noting that the first-time voter restriction "imposes an unnecessary and undue burden on the right to vote for eligible absentee voters"). By finally discerning the categories of voters eligible to vote by mail during the COVID-19 crisis, the *Fisher* opinion clarifies which *first-time* voters are otherwise eligible to vote by mail for purposes of Plaintiffs' claim. Thus, while the *Fisher* opinion does not affect the nature of the relief Plaintiffs' seek—*i.e.*, an injunction of the first-time voter restriction for otherwise absentee eligible first-time voters—it clarifies the scope of who may benefit from such relief.

Outside of this clarification of the scope of relief available under Plaintiffs' first-time voter claim, the *Fisher* Opinion—including its factual recitation of the seriousness of the COVID-19 pandemic in Tennessee—only confirms that for otherwise absentee eligible first-time voters, the burden imposed on their right to vote by having to vote in person is extremely heavy. *See* Mot. at 27–29. Indeed, for such voters, many of whom will fall into the category of individuals with special vulnerability to COVID-19, the "best way to prevent illness is to avoid being exposed to the virus." *See Fisher* Opinion at 4–5 (quoting Op. Tenn. Att'y Gen. No. 20-14 at \*\*1‑2 (July 24, 2020)). But unless the first-time voter restriction is enjoined by the Court, such vulnerable first-time voters will have to vote in person, despite even the State's concession that they should otherwise be permitted to vote by mail under state law to safeguard their health.

\*   \*   \*

For the reasons articulated in Plaintiffs' moving and reply papers, and as further clarified herein, the Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated: August 11, 2020

Respectfully Submitted,

   */s William L. Harbison*

| | |
|---|---|
| Danielle Lang* | William L. Harbison (No. 7012) |
| Ravi Doshi* | Lisa K. Helton (No. 23684) |
| Molly Danahy* | Christopher C. Sabis (No. 30032) |
| Jonathan Diaz* | Christina R.B. López (No. 37282) |
| Campaign Legal Center | Sherrard, Roe, Voigt & Harbison, PLC |
| 1101 14th Street NW, Suite 400 | 150 3rd Avenue South, Suite 1100 |
| Washington, DC 20005 | Nashville, TN 37201 |
| Tel.: (202) 736-2200 | Phone: (615) 742-4200 |
| dlang@campaignlegalcenter.org | Fax: (615) 742-4539 |
| rdoshi@campaignlegalcenter.org | bharbison@srvhlaw.com |
| mdanahy@campaignlegalcenter.org | lhelton@srvhlaw.com |
| jdiaz@campaignlegalcenter.org | csabis@srvhlaw.com |
| | clopez@srvhlaw.com |

Ezra Rosenberg*
Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW Suite 900
Washington, DC 20005
Tel.: (202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

*Admitted Pro Hac Vice

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY, pursuant to Local Rule 5.01, that on this 11th day of August, 2020, the foregoing was served via the Court's CM/ECF filing system and by electronic mail on the following:

    Janet Kleinfelter
    Andrew B. Campbell
    Alexander Rieger
    Matthew D. Cloutier
    Office of the Tennessee Attorney General
    301 6th Ave. N.
    Nashville, Tennessee 37243
    janet.kleinfelter@ag.tn.gov
    andrew.campbell@ag.tn.gov
    alex.rieger@ag.tn.gov
    matt.cloutier@ag.tn.gov

    *Counsel for Defendants*

                                                         */s William L. Harbison*