IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, et al. | ) ) ) |
| Plaintiffs, | ) NO. 3:20-cv-00374 ) JUDGE RICHARDSON |
| v. | ) ) |
| TRE HARGETT, et al., | ) ) |
| Defendants. | ) |

# ORDER

Pending before the Court is Plaintiffs' motion (Doc. No. 68, "Motion to Reconsider") requesting that the Court reconsider its Memorandum Opinion and Order (Doc. No. 66, "Order") denying in part Plaintiffs' Motion for Preliminary Injunction (Doc. No. 40, "Motion for a Preliminary Injunction"). In compliance with this Court's directive (Doc. No. 70), Defendants filed a response (Doc. No. 71, "Response") to the Motion.

As the parties surely will be pleased to hear, the Court realizes that much remains to be done on this case, and done in a compressed timeframe. And as they surely also will be pleased to hear, the Court is currently hard at it, even as it deals with an otherwise heavy caseload. To allocate judicial resources most efficiently, the Court will presume readers' familiarity with this case's procedural history, the parties' briefing on the Motion for Preliminary Injunction, and the Order.

To summarize the Order briefly, therein the Court denied the Motion for Preliminary Injunction insofar as it sought to enjoin the enforcement of Tenn. Code Ann. 2-6-202(c)(4) ("Paragraph (c)(4)"), which provides, "A person who is not an employee of an election commission commits a Class A misdemeanor if such person gives an unsolicited request for application for absentee ballot to any person." Concisely recapped, the Court's reasoning

essentially was that: **(A)** as explained by Plaintiffs themselves, they intended to distribute (unsolicited) only a particular form ("Form"),[1] which they believe constitutes a "request for [an] application for [an] absentee ballot" within the meaning of Paragraph (c)(4); **(B)** the absence of an injunction prohibiting enforcement of Paragraph (c)(4) would irreparably injure Plaintiffs, if at all, only if enforcement of Paragraph (c)(4) would interfere with Plaintiffs' plan to distribute the Form unsolicited; **(C)** the Form, however, is clearly not a "request for [an] application for [an] absentee ballot" within the meaning of Paragraph (c)(4), but rather an application for an absentee ballot within the meaning of Tenn. Code Ann. 2-6-202(c)(3) ("Paragraph (c)(3)"); **(D)** Plaintiffs thus could not possibly suffer an injury from the non-enjoinment of Paragraph (c)(4), because the specified activity in which they sought to engage, unsolicited distribution of the Form, was not within the scope of the (criminal) prohibition set forth in Paragraph (c)(4); and therefore **(E)** Plaintiffs could not possibly show the irreparable injury they were required to show in order to preliminarily enjoin the enforcement of Paragraph (c)(4).

---

[1] In its order directing Defendants to respond to the Motion to Reconsider, the Court noted that Plaintiffs use the plural, "Forms," in the Motion to Reconsider but that the Court would use the singular, "Form," based on its understanding that there is currently a single version of the form at issue. (Doc. No. 70 at 1 n.1). In the Response, Defendants opined that Plaintiffs' use of the plural was appropriate because there are actually two different versions of the form at issue, one being the version the Court had in mind (the one available from the Secretary of State's website), and the other being one available from the Davidson County Election Commission. (Doc. No. 71 at 3 n.1). Defendants noted that Plaintiffs' filings had referenced the latter version as well as the former version, and Defendants apparently concluded that Plaintiffs were interested in distributing both versions, thus making the plural, "Forms," appropriate. (*Id.*). The Court understands Defendants' point and appreciates the explanation. But the Motion to Reconsider in particular, though using the plural, refers in one place to "*the* version of the form," namely, the Secretary of State's version. (Doc. No. 69 n.1). And although the Motion to Reconsider (*id.* at 1) referred also to Exhibit 10 to the (first) Doshi Declaration, which is in fact the Davidson County version, the reference was obscured by several circumstances, including: (1) Plaintiff's omission of any accompanying description of what Exhibit 10 is; (2) the fact that the (first) Doshi Declaration itself incorrectly states that the Davidson County version is attached as Exhibit 11 rather than Exhibit 10, (*Doc. No.*t 40-2 at 4); and (3) the fact that Plaintiffs attached to the (first) Doshi Declaration 16 exhibits, all in a single PDF comprising 1351 pages, none of which is identified as the page where Exhibit 10 could be found. In any event, with full knowledge that Plaintiffs may wish to distribute the Davidson County version also, the Court will continue herein to use the singular term, "Form," especially because, as Defendants correctly note, "[w]hile cosmetically different, these two forms are substantively the same[.]" (Doc. No. 71 at 1 n.1).

Convinced that the Court had made in the Order a clear and fundamental error as to whether it was Paragraph (c)(3) or Paragraph (c)(4) that prohibits the conduct Plaintiffs wish to undertake, Plaintiffs promptly filed the Motion to Reconsider. Therein, Plaintiffs asserted that the Court erred due to "an understandable confusion emanating from Tennessee's distinctions between 'applications' and 'requests' to vote by mail." (Doc. No. 69 at 2). The Court does not begrudge Plaintiffs for attributing confusion to the undersigned, especially given the commendably professional and tactful way that they did so. But the fact remains that the Court was not confused about any aspect of the issues or analysis.[2] The Court believes that this is apparent from the Court's discussion in the Order, in which the Court explained clearly the difference between *a request for an application* for an absentee ballot (covered by Paragraph (c)(4)) and a request (i.e., an application) for the absentee ballot itself (covered by Paragraph (c)(3)). And further, the Court wishes also to assure the parties that he actually had considered most of the points raised by Plaintiffs in the Motion to Reconsider but declined to address them because they had not yet been raised and/or because they (being in the Court's mind either flawed or immaterial) would not change the result.

Regarding the flaws and/or immateriality of the points set forth in the Motion to Reconsider, they are properly exposed in the Response, the substance of which the Court adopts in all material respects. The Court need not dwell much on this, but it will make a few observations in this regard.

---

[2] Relatedly, Plaintiffs' claim that the "Court analyzed the issues raised by Plaintiffs' motion under the *assumption* that the Forms at issue are 'applications,'" (Doc. No. 69 at 4) (emphasis added), is inaccurate. The Court did not *assume*, but rather made the *determination*, that the Form is an application (for an absentee ballot). In its Order, the Court explained this determination in brief and indisputable terms: on its face, the Form plainly requests an absentee ballot and does not request an application for an absentee ballot. (Doc. No. 66 at 11). The Court did not see the need to explain this determination further at the time. But in light of the Motion to Reconsider, Defendants in their Response, and the Court herein, have now further explained why the Court's determination was sound.

First, in the Court's view, Plaintiffs never came to grips with the fact that the Form has all of the hallmarks of an application for an absentee ballot, and none of the characteristics that would distinguish it as a mere request for an application for an absentee ballot rather than an application for an absentee ballot. Among those hallmarks are a required sworn verification (under penalty of perjury) of all information provided by the submitter on the Form, a clear identification of the *absentee ballot* as the precise item being requested, and a submission deadline of seven days prior to the election.[3] Second, Plaintiffs concluded that the Form could not possibly be an application for an absentee ballot within the meaning of Paragraph (c)(3) if it was available online (and thus "mass distributed," in Plaintiffs' terms) rather than "strictly controlled" by county election commissions. (Doc. No. 69 at 5, 7-8 & n.4).[4] This belief is understandable, especially if one narrowly construes the rule that an election commission may "furnish only one (1) application for absentee voting . . . to any voter" as prohibiting the possibility that a voter might avail herself

---

[3] The stated submission deadline for the Form is the deadline for *submitting* an application for an absentee ballot. *See* Tenn. Code Ann. § 2-6-202(a)(1). This plainly is not a deadline for *requesting* an application for an absent ballot. If it were, that would be nonsensical; voters submitting a timely request for an application right at the deadline would be unable (or at the very least highly unlikely) to receive (in response) an application in time for it to be submitted prior to the deadline for submitting applications. Indeed, unlike applications for an absentee ballot, a request for an application for an absentee ballot does not have a statutory deadline (even if it does have essentially an amorphous *practical* "deadline," as just suggested). This is yet another signal that the Form is not a request for an application for an absentee ballot.

[4] This unwarranted conclusion may explain why Plaintiffs ignored the telltale signs that the Form is an application for an absentee ballot rather than a request for an application for an absentee ballot.

online of multiple copies of a single application form. Tenn. Code Ann. § 2-6-202(c)(2).[5] But this conclusion turns out to be incorrect, for the reasons explained in the Response.[6]

Second, Plaintiffs disregarded, and indeed scoffed at, the insistence of the State's essentially top two election-administration officials[7] that the State's cache of official election forms simply did not include a form request for an application for an absentee ballot. Plaintiffs would have *themselves tell the State* what its forms are vis-à-vis state statutes, not vice versa. In taking this approach, Plaintiffs do so at their peril—especially when the face of the Form supports

---

[5] Such a construction is premised on the reasonable but debatable notion that if a form application is made available online to a person, the person has been "furnish[ed more than just] (1) application[.]" Tenn. Code Ann. § 2-6-202(c)(2). Obviously, based on the fact that they have made applications available online, state election officials do not construe this rule so narrowly. And as noted herein, at this stage the Court defers to a substantial extent to these officials with respect to the interpretation of such elections law. Moreover, the Court certainly looks to how relevant election laws are actually being interpreted and applied, in considering whether a party will suffer irreparable injury absent enjoinment of a particular election law.

[6] In this regard, Plaintiffs paraphrase Tenn. Code § 2-6-202(c)(2) in pertinent part as follows: "the election commission must track the distribution of applications to vote absentee, and can only provide them to voters one-at-a-time." (Doc. No. 69 at 5). This paragraph of the statue, as noted above, does provide that an election commission may "furnish only one (1) application for absentee voting . . . to any voter[.]" And it also provides that the election commission "shall note on [its] records" that it has supplied a voter with a subsequent application for an absentee ballot if the voter notifies the election commission that the voter has either spoiled or not received an application sent by the election commission to the voter. The Court sees how this language can support Plaintiffs' construction. But it does not conclusively establish by itself a tracking requirement for the original issuance of an application for an absentee ballot that precludes the State from lawfully making a form application available online. Defendants clearly do not read the language that way and, as noted herein, the Court can and does defer substantially to their interpretation for purposes of the Motion for a Preliminary Injunction.

[7] In the Amended Complaint, Plaintiffs describe Defendants Hargett and Goins, in their official capacities, as follows:

> 32. Defendant Tre Hargett is the Secretary of State for the State of Tennessee and is sued in his official capacity. The Secretary appoints the Coordinator of Elections who serves "at the pleasure of the secretary of state" and may make regulations only as necessary to carry out the election code with "the concurrence of the secretary of state." Tenn. Code § 2-11-201(a), (c).
>
> 33. Defendant Mark Goins is the Coordinator of Elections for the State of Tennessee and is sued in his official capacity. The Coordinator is "the chief administrative election officer of the state" charged with "obtain[ing] and maintain[ing] uniformity in the application, operation and interpretation of the election code." *Id.* § 2-11-201(b); *see also id.* §§ 2-11-202, 2-2-115. As Coordinator, Goins is also authorized to investigate or direct local authorities to investigate "the administration of the election laws," and to "report violations to the district attorney general or grand jury for prosecution." *Id.* § 2-11-202(a)(5).

(Doc. No. 39 at 14).

the state officials' (rather than Plaintiffs') interpretation of the applicability of state-law provisions to the Form. *See Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012) (noting Texas's Secretary of State's interpretation of election law "must be accorded some meaningful weight, as she is the official charged with enforcing the statute. We defer to her interpretation of how the law is to be enforced, so long as it does not conflict with the statutory text.").

Third, Plaintiffs seemingly reason that since (according to their incorrect premise) the Form is not an application for an absentee ballot (but nevertheless serves as one in the State's eyes), then the Form *must* qualify as a request for an application for an absentee ballot under Tenn. Code Ann. § 2-6-202(a)(3) (*i.e.,* the kind of request for an application for an absentee ballot that serves as an application for an absentee ballot under Tenn. Code Ann. § 2-6-202(a)(3)). This reasoning is flawed because on its face, the Form simply does not request, in any way or under any construction whatsoever, an *application* for a ballot as opposed to a *ballot*. Therefore, regardless of its ultimate treatment by the State—and in particular regardless of whether the State for whatever reason chooses to treat it as an application for an absentee ballot under Tenn. Code Ann. § 2-6-202(a)(3)—the Form could not at any point constitute a request for an application for an absentee ballot within the meaning of the criminal prohibition set forth at Paragraph (c)(4).

In short, Plaintiffs lose sight of the real issue here. It is not whether someone, working backwards from a form that indisputably requests only an absentee ballot and not an application for an absentee ballot, could nevertheless concoct a colorable basis for calling it a request for an application for an absentee ballot within the meaning of Tenn. Code Ann. § 2-6-202(a)(3). Instead, the issue is whether state enforcement authorities could even conceivably characterize the distribution of such a form as the distribution of a request for an application for an absentee ballot within the meaning of the criminal prohibition of Paragraph (c)(4); the answer to this question is

no. And as discussed below, Defendants now have made it clear that the authorities are exceedingly unlikely to even try to make such a characterization.

Fourth, there is no merit to Plaintiffs' claim (Doc. No. 69 at 2-3) that the terms "absentee ballot request" and "request for an absentee ballot"—which are essentially what the Form calls itself—actually "refer to requests for an application to vote absentee" and not to a "formal 'application for an absentee ballot'" within the meaning of Paragraph (c)(3). Plaintiffs' claim here is unsupported beyond a quote, from a (non-precedential) 1995 Attorney General Opinion, that is inapposite in that it speaks only to: (A) what qualifies as an "application for an absentee ballot"; and not to the converse question(s) of (B) what an "absentee ballot request" or "request for an absentee ballot" is and, in particular, whether it is a request for an application for an absentee ballot is not.[8] To the extent that Plaintiffs suggest that any term using the word "request" in this context must refer to a request for an application, and not to the application itself, that is simply incorrect. As Defendants correctly note, and as the Court fully realized in referring in the Order interchangeably to a *request* for an absentee ballot and an *application* for an absentee ballot, there is a recognized item known (alternatively) as a request for an absentee ballot that is distinct from a request for an application for an absentee ballot. (Doc. No. 71 at 4-5 n.2 ("In fact, the Tennessee Code—like the Court—uses 'application' and 'request' interchangeably when addressing a voter seeking an absentee ballot.")).

---

[8] Elsewhere, this Attorney General opinion in fact cuts against Plaintiffs when it notes:

> As a criminal statute, T.C.A. § 2–6–202(c)(3) must be strictly construed in favor of any person who may be charged with violating its provisions. *Williams*, 623 S.W.2d at 124. Any reasonable doubt as to the intended meaning of a criminal statute must be resolved in favor of the defendant. *State v. Henderson*, 623 S.W.2d 638, 640 (Tenn.Cr.App.1981). In the opinion of this Office, therefore, T.C.A. § 2–6–202(c)(3) should be narrowly construed.

Tenn. Op. Att'y Gen. No. 95-003 (Jan. 6, 1995). Just like Paragraph (c)(3), Paragraph (c)(4) must be construed narrowly and in favor of Defendants. It would take an exceeding broad, rather than narrow, construction to deem a form that unquestionably does not request an application for an absentee ballot as a request for an application for an absentee ballot for purposes of Paragraph (c)(4).

Finally and perhaps most significantly, Plaintiffs apparently assumed that Defendants would have to, and would, agree with them that the Form is a request for an application for an absent ballot. The assumption was unwarranted, as Defendants in their Response make crystal clear their view that the Form is simply and unequivocally *not* a request for an application for an absentee ballot within the meaning of Paragraph (c)(4), but rather an application for an absentee ballot within the meaning of Paragraph (c)(3). (Doc. No. 71 at 4, 10).

And as noted above, Defendants' view is very important, considering their role in enforcing election law in Tennessee. Via the Response filed by their counsel (the Attorney General and Reporter for the State of Tennessee), the state's Secretary of State, the state Coordinator of Elections, and the district attorney general for the most populous county in Tennessee have unambiguously declared the Form to be outside the scope of Paragraph (c)(4). This is tantamount to a declaration from these officials, tasked (especially Defendant Goins) with unique enforcement authority concerning state election laws (including Paragraph (c)(4)), that distribution of the Form cannot and should not be prosecuted under Paragraph (c)(4). The Court can and does accept this (strongly) implied representation for purposes of the instant analysis. *See Voting for Am., Inc.*, 488 Fed. App'x at 897 ("[The Texas Secretary of State, charged with enforcing state election laws] has repeatedly asserted that she does not and will not seek to enforce the [law at issue] to prevent any individual or organization from freely handing out voter registration applications and encouraging citizens to vote. The district court accepted these representations for purposes of its analysis, so we do as well.").

The Court understands that even so, theoretically a prosecutor somewhere in Tennessee— going "rogue" or at least being overzealous—could seek to prosecute someone under Paragraph

(c)(4) for distributing the Form. But such an attempt would be so objectively imprudent—even absurd—that the Court can say that this possibility verges on completely non-existent.

It is thus abundantly clear that no one reasonably can—and no one will—be prosecuted under Paragraph (c)(4) for distributing unsolicited Forms. There is no question that Plaintiffs' sole identified proposed course of conduct, though perhaps subject to enforcement under Paragraph (c)(3), could not properly and would not be subject to enforcement under Paragraph (c)(4). And Plaintiffs have challenged the enforcement of only the latter, and not the former, provision. Thus, they will not suffer irreparable harm via this Court's declining to issue the particular preliminary injunctive relief Plaintiffs have sought with respect to the Form.

For all of these reasons, the Court adheres to it earlier ruling, and the Motion to Reconsider (Doc. No. 68) is hereby **DENIED.**

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE