IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, THE EQUITY ALLIANCE, FREE HEARTS, THE MEMPHIS AND WEST TENNESSEE AFL-CIO CENTRAL LABOR COUNCIL, THE TENNESSEE STATE CONFERENCE OF THE NAACP, SEKOU FRANKLIN, and KENDRA LEE, <br><br>Plaintiffs, <br><br>v. <br><br>TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his Official capacity as Coordinator of Elections for the State of Tennessee, and AMY WEIRICH, in her official capacity as the District Attorney General for Shelby County, Tennessee, <br><br>Defendants. | Case No. 3:20-cv-00374 <br> Judge Richardson <br> Magistrate Judge Frensley |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants submit this reply in accordance with the 14-day timeline set out in the Case Management Order. (*See* DE 58, PageID# 2253, ¶ L.) Because Plaintiffs allege nothing more than "possible future injury," they lack standing and their claims must be dismissed. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

**I. Organizational Plaintiffs Cannot Demonstrate Any Injury.**

Organizational Plaintiffs claim to have "asserted sufficient facts to establish both direct and associational standing as to each of their claims." (DE 78, PageID# 2504.) But this position cannot be squared with well-settled law or with this Court's recent orders. Plaintiffs lack direct

1

Case 3:20-cv-00374   Document 82   Filed 09/10/20   Page 1 of 8 PageID #: 2642

standing because they have not suffered any injury traceable to the State's conduct. And they lack associational standing because they have not shown that any member is likely to suffer injury.

## A. Direct Standing

Plaintiffs insist that each Organizational Plaintiff has direct standing to challenge Tennessee's signature-verification procedures. This is because, they argue, each Organizational Plaintiff has "overhauled its voter engagement program to focus more directly on absentee voting" and this "diversion and additional expenditure of resources directly harms" those organizations. (D.E. 78, PageID# 2506.) But Plaintiffs' voluntary diversion of resources is not enough. In *Fair Elections Ohio v. Husted*, the Sixth Circuit acknowledged that organizational plaintiffs—like Plaintiffs here—had diverted resources to educate voters about an existing law, but concluded that they lacked standing because that diversion was fairly traceable to their ignorance of the law—not to the State's conduct. 770 F.3d 456, 459–60 (6th Cir. 2014). So too here.

Plaintiffs seek to distinguish *Fair Elections Ohio* by arguing that while the "question of whether a law is existing or newly enacted may help the court analyze the complained-of injury," the "key question remains whether the injury is traceable to the defendant's conduct." (DE 78, PageID# 2507.) But this does not help Plaintiffs. Plaintiffs cannot manufacture standing solely by diverting resources to educate voters about a law that is unlikely to cause injury—that diversion of resources is not traceable to the State. In other words, an organization cannot "spend its way into standing based on speculative fears of future harm." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020), *pet. for cert. filed*, No. 19-6142 (June 22, 2020).

The bottom line is that Organizational Plaintiffs have not suffered an injury traceable to the State. Like the plaintiffs in *Fair Elections Ohio*, they have alleged only the voluntary diversion of resources to educate voters about existing laws. This is not enough. Indeed, if an "organization [could] be deemed to have Article III standing merely by virtue of its efforts and expense to advise

2

others how to comport with the law, or by virtue of its efforts and expense to change the law," the concept of standing "would be eviscerated." *See Fair Elections Ohio*, 770 F.3d at 460.

### 2. Associational standing

Organizational Plaintiffs also claim to possess associational standing. To show associational standing, an organization must make "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Plaintiffs, however, argue that they need not "identify a specific member who will be harmed in the future because doing so would, of course, be impossible." (DE 78, PageID# 2511.) But that is not the rule—at least, not quite. It is true, of course, that courts have permitted certain claims to go forward without the identification of a specific individual who will be harmed in the future. Plaintiffs, for example, point to *Sandusky County. Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004). But in *Sandusky*, the Sixth Circuit permitted the plaintiffs' claim to proceed because the harms they alleged were "inevitable."[1] *Id.* at 574. Here, Plaintiffs cannot make this showing. As a result, they must identify a specific member who is likely to suffer a concrete injury—i.e., a member with standing. *See Summers*, 555 U.S. at 498.

Organizational Plaintiffs make no attempt to identify any specific member who is likely to suffer injury from the State's signature-verification procedures. Instead, they argue that they have thousands of members and "expect that at least some of their members who vote by mail will not

---

[1] Plaintiffs also rely on *Tenn. Republican Party v. Sec. & Exch. Comm'n*, 863 F.3d 507 (6th Cir. 2017) and *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153 (11th Cir. 2008). But, like *Sandusky*, these cases confirm that Plaintiffs may escape the requirement of naming a specific individual only in the rare instance where the harms alleged are inevitable. *See Tenn. Republican Party*, 863 F.3d at 517 (explaining that the court has, "on occasion," found it "reasonable to infer actual and imminent . . . injuries"); *Browning*, 522 F.3d at 1160 (observing that while there are cases in which organizational plaintiffs need not "name names because every member faces a probability of harm in the near and definite future," there must still be a "realistic danger" that is not "merely hypothetical or conjectural").

3

Case 3:20-cv-00374   Document 82   Filed 09/10/20   Page 3 of 8 PageID #: 2644

have their ballots counted as a result of signature matching." (DE 78, PageID# 2511.) But the "requirement" that organizational plaintiffs "nam[e] the affected members has never been dispensed with in light of statistical probabilities." *Summers*, 555 U.S. at 498–99. And as this Court recognized, of the 109,627 absentee ballots cast in the 2016 and 2018 national elections, only 36—about .03%—were rejected for signature irregularities. (*See* DE 77, PageID# 2495.) Based on these numbers, this Court concluded that no "deprivation, let alone erroneous deprivation," of the individual Plaintiffs' right to vote was likely. (*Id.*) Nor would Organizational Plaintiffs suffer any deprivation—both because they themselves cannot vote and because while "it is possible that a handful of [their members] may have their ballots rejected; and perhaps some of them may have their ballots rejected erroneously," this is "mere speculation." (*Id.* at PageID# 2496) And speculation is not enough: a plaintiff must show "an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

While Plaintiffs cannot identify any member who would be harmed by the State's signature-verification procedures, they do point to one individual who allegedly has standing to challenge the State's requirement that first-time voters appear in person. According to Plaintiffs, Corey Sweet is a "first-time voter and member of the Tennessee NAACP who was otherwise eligible to vote by mail, but registered to vote online earlier this year." (DE 78, PageID# 2514–15.) But Mr. Sweet's declaration does not *say* that; the word "member" appears nowhere in his declaration.[2] Instead, Mr. Sweet states only that he "occasionally attend[s] events of the Tennessee

---

[2] "Federal court are courts of limited jurisdiction." (DE 79, PageID# 2592.) This Court "[is] vested with the power to hear only those cases . . . which are within the judicial authority of the United States, as defined by the Constitution." *Nasco, Inc. v. Norsworthy*, 785 F. Supp. 707, 709 (M.D. Tenn. 1992). In *Nasco*, this Court remanded a case back to state court based on a "technical[], but nevertheless fatal[]" flaw in the defendants' petition for removal. *Id.* The defendants' petition asserted the "residency" of the parties, not their citizenship. *Id.* This Court remanded the case because "'it is a long established proposition that *domicile*, not residence,

4

State Conference of the NAACP." (DE 78-8, PageID# 2575.) One can "attend" an event without being a "member" of the organization. If the converse were true, then every member of the media who personally has covered an NAACP "event" would be a "member" of the NAACP. Plaintiffs, then, cannot claim associational standing based on Mr. Sweet's "occasional" attendance of *some* NAACP events. Further, Plaintiffs have not shown that Mr. Sweet is likely to suffer imminent and concrete harm traceable to the State. Nor can they: Mr. Sweet himself does not allege any such harms. He alleges only that—as of July 6, 2020—he was uncertain whether he would be in Tennessee to vote in the *August* election, that he would "prefer to vote by mail" in that election, and that he does not have money to fly back to vote in the *August* election. (*See* DE 78-8, PageID# 2575–76.) His declaration says nothing about the *November* election—the only election at issue in this case—and, more fundamentally, the alleged harms (if they relate to the November election at all) are not constitutionally cognizable. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 405 (5th Cir. 2020) (explaining that "[t]he Constitution is not 'offended simply because some' groups 'find voting more convenient than' do the plaintiffs because of a state's mail-in ballot rules.") (quoting *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 810 (1969)).

In sum, because Organizational Plaintiffs cannot point to any member who is likely to be harmed by the challenged laws, they lack standing and their claims must be dismissed.

## III. The Individual Plaintiffs Cannot Demonstrate Any Injury.

The two Individual Plaintiffs—Sekou Franklin and Kendra Lee—are similarly unable to show that they will suffer a cognizable injury. Neither Franklin nor Lee purport to be first-time

---

determines State citizenship for the purposes of diversity jurisdiction.'" *Id.* (quoting *Thompson v. Gillen*, 491 F.Supp. 24, 27 (E.D. Va. 1980). The same logic applies here. Organizational Plaintiffs are required to identify specific affected "members" to avail themselves of associational standing. Yet Mr. Sweet never claims to be a "member" of the Tennessee NAACP—only that he "occasionally attend[ed]" some of the organization's events. This is insufficient under *Nasco*.

voters, so they will suffer no injury from the State's requirement that first-time voters appear in person. And while they argue that they "have no certainty as to whether their ballot will survive signature-verification review," this lack of certainty does not equal standing. *See Shelby Advocates for Valid Elections*, 947 F.3d at 983 (concluding that plaintiffs lacked standing because they "allege[d] only policies that add risk to the ever present possibility that an election worker will make a mistake"). And what is more, this Court has already concluded that the State's signature-verification procedures were unlikely to cause "deprivation, let alone erroneous deprivation," of the individual Plaintiffs' right to vote. (DE 77, PageID# 2495.) As a result, Franklin and Lee do not have standing and their claims must be dismissed.[3]

## CONCLUSION

For all of these reasons, this Court should grant Defendants' motion and should dismiss Plaintiffs' complaint in full.

---

[3] Plaintiffs seek to escape this conclusion by arguing that because Organizational Plaintiffs have standing, "other plaintiffs may continue to pursue the litigation because only one plaintiff is required to have standing." (DE 78, PageID# 2505, n.6.) But while it is true that "only one plaintiff needs to have standing in order for the *suit* to move forward," *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (emphasis added), it does not follow that individual plaintiffs who do not themselves have standing may continue to seek relief from the court simply because another plaintiff does have standing, *see, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 704 (recognizing that an "essential aspect" of the Article III case and controversy requirement "is that any person invoking the power of a federal court must demonstrate standing to do so").

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ *Matthew D. Cloutier*
JANET M. KLEINFELTER (BPR #13889)
Deputy Attorney General
Janet.kleinfelter@ag.tn.gov

ANDREW B. CAMPBELL (BPR #14258)
Senior Assistant Attorney General
Andrew.campbell@ag.tn.gov

ALEXANDER S. RIEGER (BPR #029362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

MATTHEW D. CLOUTIER (BPR #036710)
Assistant Attorney General
Matt.cloutier@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

William L. Harbison
Lisa K. Helton
Christopher C. Sabis
Christina R.B. López
Sherrard, Roe, Voigt & Harbison, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201

Danielle Lang
Ravi Doshi
Molly Danahy
Jonathan Diaz
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005

Ezra Rosenberg
Pooja Chaudhuri
Jacob Conarck
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005


Date: September 10, 2020                /s/ *Matthew D. Cloutier*
                                        Matthew D. Cloutier
                                        Assistant Attorney General