IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, THE EQUITY ALLIANCE, FREE HEARTS, THE MEMPHIS AND WEST TENNESSEE AFL-CIO CENTRAL LABOR COUNCIL, THE TENNESSEE STATE CONFERENCE OF THE NAACP, SEKOU FRANKLIN, and KENDRA LEE, <br><br> Plaintiffs, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his Official capacity as Coordinator of Elections for the State of Tennessee, and AMY WEIRICH, in her official capacity as the District Attorney General for Shelby County, Tennessee, <br><br> Defendants. | Case No. 3:20-cv-00374 <br> Judge Richardson <br> Magistrate Judge Frensley |

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER**

Defendants respectfully ask this Court to reconsider its September 9, 2020 Order granting Plaintiffs' motion to preliminarily enjoin Tenn. Code Ann. § 2-2-115(b)(7)'s requirement that first-time voters who registered to vote by mail "appear in person to vote." In that Order, this Court concluded that "the NAACP has associational standing [to challenge Section 2-2-115(b)(7)] by virtue of the standing of its member, Mr. Sweet." (DE 79, PageID# 2599.) This Court also observed, however, that Plaintiffs only "made the bare minimum showing of standing." (*Id.*) Plaintiffs' latest filings undercut even that "bare minimum showing" and reveal that they currently lack standing. For that reason, this Court should reconsider its September 9, 2020 Order.

1

**I.       Mr. Sweet's Newly Filed Declaration Confirms that Plaintiffs Lack Standing.**

In its September 9, 2020 Order, the Court "credit[ed] the averments in Sweet's declaration" to find that he had "sufficiently established that the first-time voter restriction is applicable to him, and thus would prevent him from voting absentee." (DE 79, PageID# 2597.) This finding was the lynchpin of the Court's standing analysis—Corey Sweet is not a named defendant, but his alleged membership in the NAACP, an organizational plaintiff, allowed the Court to determine that the NAACP had associational standing sufficient to proceed to the merits of the preliminary injunction. (DE 79, PageID# 2599.)

But on September 10, 2020, Mr. Sweet updated his declaration. (*See* DE 86-2, PageID# 2669.) He no longer lives in Louisiana; he transferred from Xavier University to the University of Memphis in mid to late July. (DE 86-2, PageID# 2670.) He now resides in Shelby County with his parents. (DE 86-2, PageID# 2670.)

This information materially alters the entire standing analysis: *Mr. Sweet can no longer vote absentee.* Mr. Sweet no longer resides out of county. *See* Tenn. Code Ann. § 2-6-201(1) and (2). And his declaration sets forth no other statutory basis rendering him eligible to vote absentee. *See, e.g.,* Tenn. Code Ann. § 2-6-201. Nor does he aver that he is especially vulnerable to COVID-19. *See, e.g.*, *Fisher v. Hargett*, 604 S.W.3d 381 (Tenn. 2020). This means that Mr. Sweet *must* cast his vote in person, *regardless* of whether he is a first-time voter.[1]

His second Declaration claims that his injury is having to comply with Tenn. Code Ann. § 2-2-115(b)(7) by voting in person and showing identification at that time, risking exposure to COVID-19. (DE 86-2, PageID# 2670-71; DE 79, PageID# 2598.) But this alleged injury is not

---

[1] Indeed, in Plaintiffs' response to Defendants' Motion to Dismiss, "Plaintiffs use 'first-time voters' [] to describe both categories of individuals who are subject to the requirement to vote in person, but are otherwise eligible to vote by mail." (DE 78, Page ID# 2503 n.4.) But Mr. Sweet no longer meets that definition of a "first-time voter," as he is not otherwise eligible to vote by mail under Tennessee law.

traceable to the first-time voter requirement, but the general requirement that *all* votes must be cast in person unless the voter qualifies for an absentee exception. And while he references several possible justifications for voting absentee such as "illness, being out of county during the voting period, or jury duty," he candidly admits that he "doesn't know whether [he] will fall into any of these categories." (DE 86-2, PageID # 2670–71.); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (explaining that "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient") (emphasis in original). Thus, his professed injury at this point is abject speculation. More importantly, Plaintiffs have "elected to no longer pursue" injunctive relief as to the general requirement that all voters must vote in person.[2] (D.E. 78, PageID# 2505, n.6.)

This is also consistent with the requirements of the NVRA and HAVA: since Mr. Sweet must vote in person, he suffers no additional cognizable injury from having to show photo identification or other documents verifying identification in person at that time, as required by federal law. *See* 52 U.S.C. § 21083(b)(2); 52 U.S.C. § 20505(c).

Mr. Sweet's Declaration also fails to demonstrate standing for the August primary election relief Plaintiffs sought. Mr. Sweet avers under oath that he could not vote in the August primary because he "had remote class on August 18 for a significant part of the day and I did not have transportation." (DE 86-2, PageID # 2670.) But the August primary election occurred on August 6, 2020, not August 18. *See* https://sos.tn.gov/products/elections/2020-election-calendar. And a cursory review of the University of Memphis' calendar for the Fall 2020 semester indicates that

---

[2] Plaintiffs declined to address Defendants' motion to dismiss their request for relief as to the general requirement that all votes be cast in person and expressed their intention to move the Court for leave to dismiss the claim. (*See* D.E. 78, PageID# 2505, n. 6.)

3

classes did not begin until August 17, 2020.[3]  Thus, contrary to his latest Declaration, Mr. Sweet was able to vote in-person in the August primary.[4]

For an alleged injury to confer standing it must be "concrete"; "that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 1548 (2016).  Mr. Sweet's alleged injury simply did not exist after his move back home to Shelby County—he was already required to vote in person and thus his alleged injury is no longer traceable to the first-time voter requirement.  And as this Court aptly noted, standing must be present for a court to maintain jurisdiction to grant a preliminary injunction.  (DE 66, PageID# 2383 fn. 14.)  Accordingly, the September 9, 2020 preliminary injunction should be dissolved and Plaintiffs' challenge to the first-time voter requirements should be dismissed.[5]

## II. Even if Mr. Sweet's New Declaration did not Deprive Plaintiffs of Standing, Tennessee's First-Time Voter Requirements are Not Unconstitutional.

In its September 9, 2020 order granting Plaintiffs' motion to preliminarily enjoin Tennessee's first-time voter requirements, this Court properly applied the Supreme Court's *Anderson-Burdick* framework.  As this Court explained, "[t]here are three steps to a court's analysis under *Anderson-Burdick*": first, "the court must determine the burden at issue"; second,

---

[3] *See* https://www.memphis.edu/registrar/calendars/academic/ay2021.php.

[4] And it should also be noted that Mr. Sweet was also able to vote early in the August 2020 election had he chosen to do so.  He retains that option in the November election.

[5] Should the Court determine that Plaintiffs still possess standing despite Mr. Sweet's updated declaration, Defendants would submit that relying on Mr. Sweet's original declaration was erroneous, as it is improper for a party to introduce new explanation and evidence in a reply brief rather than the moving papers.  *See, e.g.*, *Nautilus Group Inc. v. Icon Health & Fitness, Inc.*, 308 F.Supp.2d 1208, 1214 (W.D. Wash 2003); *Jones v. Baltimore Life Ins. Co.*, 2007 WL 1713250, *9 (E.D. Cal. June 12, 2007); *MHF Zweite Academy Film GmbH and Co., v. Warner Bros Entertainment, Inc.*, 2012 WL 13012677, *2 n. 1 (C.D. Cal. Aug. 13, 2012); *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 959 (N.D. Ga. 1995) (excluding declaration filed in reply brief), *aff'd without opinion*, 87 F.3d 1331 (11th Cir. 1996), *reh'g en banc denied*, 99 F.3d 1157 (11th Cir. 1996).  As Mr. Sweet's out-of-time Declaration was Plaintiffs' only handhold for standing, the preliminary injunction should be reconsidered and dissolved on this basis as well.

it must "consider the State's justifications for the restrictions"; and third, it must "assess whether the State's restrictions are constitutionally valid given the strength of its proffered interests." (DE 79, PageID# 2601 (internal quotation marks and citations omitted).) In balancing Plaintiffs' alleged burdens against the State's asserted interests, this Court relied on the evidence in the record, including Mr. Sweet's declaration. But Mr. Sweet's new declaration shifts that balance. And for that reason, this Court should again weigh Plaintiffs' alleged burdens against the State's asserted interests.

In considering Plaintiffs' alleged burdens, this Court observed that "[t]he record suggests that at least some first-time, mail-registered voters are currently prevented from voting in the manner (i.e., by mail) in which they must vote, as a practical matter, in order to vote at all, given their COVID-19-related concerns that remove voting in person as a viable option." (DE 79, PageID # 2611.) When this Court entered its Order, the only evidence of such a voter in the record was the declaration of Mr. Sweet. (*See* DE 54-4; DE 78-8.) Plaintiffs offered Mr. Sweet as an example of a "first-time voter and member of the Tennessee NAACP who was otherwise eligible to vote by mail, but registered to vote online earlier this year." (DE 78, PageID# 2514–15.) Mr. Sweet explained that he was uncertain whether he would be in Tennessee to vote in the August election, that he would "prefer to vote by mail" in that election, and that he did not have money to fly back to vote in the August election. (*See* DE 78-8, PageID# 2575–76.) It was these harms that this Court balanced against the State's asserted interests. (*See generally* DE 79, PageID # 2611.)

But Mr. Sweet's new Declaration reveals that these harms do not exist. In his new Declaration, he admits that he is no longer attending school out of state, that he was in Tennessee for the August primary election, and that—other than fear of COVID-19 and other speculative

5

concerns—he has no reason why he cannot vote in person in November.[6] This means that Mr. Sweet is no different from those Plaintiffs in *Fisher* who were neither caretakers nor particularly susceptible to COVID-19. And for the reasons spelled out in *Fisher*, the fear of COVID-19—without more—was not a harm sufficient to outweigh the State's longstanding and legitimate interests in the integrity of the election process. *See Fisher*, 604 S.W.3d at 381 (holding that "the State's interests in the efficacy and integrity of the election process are sufficient to justify the moderate burden placed on the right to vote of those plaintiffs and persons who neither have special vulnerability to COVID-19 nor are caretakers for persons with special vulnerability to COVID-19").

Respectfully, this Court, therefore, should reconsider its prior Order in light of Mr. Sweet's new Declaration, because—by his own words—Mr. Sweet has demonstrated that he faces no constitutional harm. Defendants respectfully submit that the Court should reweigh his alleged (albeit, invalid) harms against the State's asserted interests. And as the State argued in its opposition to Plaintiffs' motion for a preliminary injunction, those interests include the "integrity of [the] election process, (*see* DE 46, PageID # 1791 (citing *Burson v. Freeman*, 504 U.S. 191, 199 (1992)) and the prevention of fraud, (*see id.* at PageID# 1792.) More specifically, the State explained that "legislative conditions imposed upon those voting by mail are necessary because 'the purity of the ballot is more difficult to preserve when voting absent than when voting in person.'" (*Id.* (citing *Emery v. Robertson Cty. Election Comm'n*, 586 S.W.2d 103, 108 (Tenn. 1979).) The State also pointed out that the Tennessee Supreme Court has "expressly recognized that the integrity of the ballot is jeopardized upon violation of *any* of the 'procedural safeguards' that the General Assembly has included in the election laws, which are obviously designed to (1)

---

[6] And as noted in Part I, because Mr. Sweet is no longer an out-of-state student, he is not eligible to vote absentee *at all*. And because he is not eligible, he cannot be harmed by Section 2-2-115(b)(7), which applies only to otherwise eligible absentee voters who registered to vote by mail.

6

prevent undue influence or intimidation of the free and fair expression of the will of the electors or (2) to insure that only those who meet the statutory requirements for eligibility to vote cast ballots." (*Id.* at PageID# 1791 (emphasis added) (citing *Foust v. May*, 660 S.W.2d 487, 489 (Tenn. 1983)).)

At bottom, the State has well-settled interests in the integrity of its election process. And as courts have recognized time and again, those interests underly and justify limitations on access to absentee ballots. *See, e.g.*, *Foust*, 660 S.W.2d at 489; *Emery*, 586 S.W.2d at 108. As a result, a plaintiff seeking to remove those limitations—especially by means of a preliminary injunction— bears a heavy burden. *See Doughtie & Co. v. Rutherford Cty.*, No. 3-13-0209, 2013 WL 3995277, at *1 (M.D. Tenn. Aug. 5, 2013). Plaintiffs here "bare[ly]" carried that burden in their request for a preliminary injunction. (*See* DE 79, PageID# 2599.) But their latest filings reveal that they were never able to carry it at all.

## CONCLUSION

For all of these reasons, this Court should grant Defendants' motion to reconsider and should vacate its September 9, 2020 Order granting Plaintiffs' motion for a preliminary injunction as to Tenn. Code Ann. § 2-2-115(b)(7).

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ *Alexander S. Rieger*
JANET M. KLEINFELTER (BPR #13889)
Deputy Attorney General
Janet.kleinfelter@ag.tn.gov

ANDREW B. CAMPBELL (BPR #14258)
Senior Assistant Attorney General
Andrew.campbell@ag.tn.gov

ALEXANDER S. RIEGER (BPR #029362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

MATTHEW D. CLOUTIER (BPR #036710)
Assistant Attorney General
Matt.cloutier@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| William L. Harbison | Danielle Lang |
| Lisa K. Helton | Ravi Doshi |
| Christopher C. Sabis | Molly Danahy |
| Christina R.B. López | Jonathan Diaz |
| Sherrard, Roe, Voigt & Harbison, PLC | Campaign Legal Center |
| 150 3rd Avenue South, Suite 1100 | 1101 14th Street NW, Suite 400 |
| Nashville, TN 37201 | Washington, DC 20005 |

Ezra Rosenberg
Pooja Chaudhuri
Jacob Conarck
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005


Date: September 11, 2020                     /s/ *Alexander S. Rieger*
                                             ALEXANDER S. RIEGER
                                             Assistant Attorney General