IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILIP RANDOLPH INSTITUTE, et al., *Plaintiffs*, v. TRE HARGETT, et al., *Defendants*. | Civil No. 3:20-cv-0374 JUDGE RICHARDSON MAGISTRATE JUDGE FRENSLEY |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO STAY (DKT. NO. 83) AND FOR RECONSIDERATION (DKT. NO. 87)**

In advance of Tennessee's August 6, 2020 primary election, the Davidson County Chancery Court determined that every voter in the state would be eligible to vote by mail *except* for first-time voters—like Plaintiff Tennessee State Chapter of the NAACP's ("Tennessee NAACP") member Corey Sweet—who registered to vote for the first time by mail or online. Tennessee NAACP therefore sued to enjoin enforcement of Tennessee Code § 2-2-115(b)(7) (the "First-Time Voter Restriction" or "the law"), on behalf of *all* of its members, including Mr. Sweet, who were harmed by the law. When the August election came, Mr. Sweet did not vote because he could not vote by mail under the law, but also did not feel like he could safely vote in person. Soon thereafter—on September 9, 2020—this Court preliminarily enjoined the First-Time Voter Restriction insofar as it requires that those who registered to vote in Tennessee by mail or online to "appear in person to vote in the first election the person votes in after such registration becomes effective."

1

Mr. Sweet is not a plaintiff in this litigation, nor is he otherwise participating in it except to the extent that he was identified as an exemplar member of Plaintiff Tennessee NAACP who was harmed by the First-Time Voter Restriction. Nevertheless, Defendants now argue that, because Mr. Sweet's personal circumstances have changed such that he may not be eligible to vote by mail in November, Tennessee NAACP is deprived of standing to sue on behalf of all its members. On that basis, Defendants request that the Court stay and reconsider its order enjoining the First-Time Voter Restriction. *See* Dkt. Nos. 83, 87. Both of these motions, which are jointly addressed here, should be denied. This Court's well-reasoned decision need not be disturbed simply because Mr. Sweet—a non-party to this litigation—is not presently an absentee-eligible voter.

First, the Sixth Circuit's law is settled that standing is determined at the commencement of the action and cannot be eliminated by subsequent events. Moreover, loss of standing for an individual member who an organizational plaintiff identified as an exemplar of one of its members harmed by the law does not render the case moot, nor does it deprive the organization of its ability to represent the interests of all of its other affected members. Because there is no dispute here that Tennessee NAACP—through at least Mr. Sweet—had standing to sue at the commencement of this action, there need be no further inquiry. Indeed, as this Court expressly recognized, "Because Plaintiffs seek only declaratory and injunctive relief, the individual members of the NAACP (including Sweet) are not required to participate herein." *See* Op. at 22.

Second, and in any event, Mr. Sweet retains his standing to sue. He has already been injured because the First-Time Voter Restriction stopped him from voting in August. He stands to be injured going forward, because the First-Time Voter Restriction will prohibit him from voting by

2

Mr. Sweet is not a plaintiff in this litigation, nor is he otherwise participating in it except to the extent that he was identified as an exemplar member of Plaintiff Tennessee NAACP who was harmed by the First-Time Voter Restriction. Nevertheless, Defendants now argue that, because Mr. Sweet's personal circumstances have changed such that he may not be eligible to vote by mail in November, Tennessee NAACP is deprived of standing to sue on behalf of all its members. On that basis, Defendants request that the Court stay and reconsider its order enjoining the First-Time Voter Restriction. *See* Dkt. Nos. 83, 87. Both of these motions, which are jointly addressed here, should be denied. This Court's well-reasoned decision need not be disturbed simply because Mr. Sweet—a non-party to this litigation—is not presently an absentee-eligible voter.

First, the Sixth Circuit's law is settled that standing is determined at the commencement of the action and cannot be eliminated by subsequent events. Moreover, loss of standing for an individual member who an organizational plaintiff identified as an exemplar of one of its members harmed by the law does not render the case moot, nor does it deprive the organization of its ability to represent the interests of all of its other affected members. Because there is no dispute here that Tennessee NAACP—through at least Mr. Sweet—had standing to sue at the commencement of this action, there need be no further inquiry. Indeed, as this Court expressly recognized, "Because Plaintiffs seek only declaratory and injunctive relief, the individual members of the NAACP (including Sweet) are not required to participate herein." *See* Op. at 22.

Second, and in any event, Mr. Sweet retains his standing to sue. He has already been injured because the First-Time Voter Restriction stopped him from voting in August. He stands to be injured going forward, because the First-Time Voter Restriction will prohibit him from voting by

2

absentee ballot if he meets the eligibility requirements between now and October 27, the last day for applying to vote absentee.

Third, even were Mr. Sweet's changed circumstances sufficient to bring Tennessee NAACP's standing into question, neither stay nor reconsideration of the Court's injunction, nor dismissal of the action altogether, would be appropriate because this case falls squarely within the "capable of repetition, yet evading review" exception to the mootness doctrine. The very nature of this claim depends on circumstances that come and go, *i.e.*, whether people fall under one of the excuses to vote absentee, and beyond that, whether they remain first-time voters at all. Often these circumstances change close to Election Day—Tennessee permits applications for absentee ballots until 7 days before Election Day—and, for some first-time voters who would seek to bring a claim, such circumstances will disappear altogether if they ultimately choose to exercise their right to vote in person rather than sacrifice the right to vote altogether. It would therefore be untenable to require that only voters who were eligible to vote absentee up to and through every election day that passes during the pendency of a litigation, and who also remain first-time voters, could support associational standing of an organization with many affected members whose identity will necessarily change with each passing week and each passing election. It would require plaintiff organizations like the Tennessee NAACP to continually scour their membership to determine which of their members have been disqualified or newly qualified to vote absentee, and to notify the court each time a change in circumstance occurred (whether because the voter became ineligible or newly eligible to vote absentee, or because they lost their status as a first-time voter by exercising their right to vote).[1] Standing and the maintenance of a case or controversy would

---

[1] While Plaintiffs maintain that such re-establishing of affected members is not necessary, Plaintiff Free Hearts has identified an impacted member that further cements Plaintiffs' standing. This member is currently incarcerated pending a trial set after the November election, turned 18 while

thus constantly be in jeopardy under Defendants' theory of standing. Common sense and case law reject that outcome, and so should this Court.

Finally, Defendants base their Motion to Stay on the sole fact that Plaintiffs filed the original Sweet Declaration with its reply papers in connection with the Motion for Preliminary Injunction. Nowhere do Defendants explain why they waited more than two months—and, then, only after they lost—to raise this issue. If Defendants believed the filing of the declaration was improper, they could have filed a motion to strike. This Court was well aware that the declaration was filed with Plaintiffs' reply and exercised its discretion reasonably to admit it. Such admission was wholly proper, and indeed, a stay would be prejudicial to the thousands of voters—including other members of the Organizational Plaintiffs—who will be deprived of the ability to vote absentee this November, despite being otherwise eligible to do so.

## **ARGUMENT**

### **I. The Motion to Reconsider Should Be Denied.**

Defendants' Motion to Reconsider is based on three faulty legal and factual premises. First, that Mr. Sweet's changed circumstance deprived him of standing after this suit was filed, and thus retroactively impacts Tennessee NAACP's standing to maintain this action and obtain injunctive relief on behalf of its other members. Second, that Mr. Sweet's standing today is contingent on his being irrevocably eligible for and committed to absentee voting in November, and necessarily, in

---

incarcerated and therefore has no choice but to register by mail, and therefore will not be permitted to vote at all unless the First-Time Voter Restriction remains suspended. Decl. of Dawn Harrington at ¶¶ 2–6. Plaintiffs submit this declaration, and another declaration of an affected Tennessee voter Joy Greenwalt, to further demonstrate that Plaintiff organizations maintain standing; that their claims are capable of repetition, but evading review, in support of their opposition to Defendants' Motion to Reconsider; and to demonstrate the public interest in support of their opposition to Defendants' Motion for Stay. Although leave is not required for that purpose, in order to avoid any suggestion that Plaintiffs are improperly adding evidence to the record, Plaintiffs have filed a motion for leave to submit these declarations in support of this opposition.

4

any subsequent election that follows during the pendency of this litigation. And third, the oft-misstated assertion that Mr. Sweet "can no longer vote absentee." Dkt. No. 88 at 2.

In short order, these faulty premises fail to support Defendants' motions for reconsideration. First, as a matter of settled law in this Circuit, even if Mr. Sweet no longer possesses standing, that the Tennessee NAACP had standing when this suit was filed—through members like Mr. Sweet—is sufficient for this Court to maintain jurisdiction over the action and provide injunctive relief. Second, in any event, Mr. Sweet's actual eligibility to vote absentee through each and every Election Day that passes during the pendency of this litigation is not an essential element of his standing to sue (and he continues to maintain such standing nevertheless). Third, even if Mr. Sweet is currently not an otherwise absentee-eligible first-time voter, thousands of other similarly situated voters (including members of Tennessee NAACP and other Plaintiff groups) are or may yet be eligible to vote absentee in November, rendering Tennessee NAACP's claim one that is capable of repetition, yet evading review, further necessitating this Court's maintaining jurisdiction and providing injunctive relief.

### A. Having Had Standing When This Suit Commenced, the Tennessee NAACP Maintains Standing Throughout the Case.

Standing is assessed "as of the time a suit is filed." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 426 (2013); *see also Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 526 (6th Cir. 2001) ("[T]he court must determine whether standing exists at the time of the filing of the complaint only"). As the Court correctly found, Tennessee NAACP had standing to pursue the first-time voter claim when the suit was filed and properly identified at least one affected voter, Mr. Sweet. *See* Op. at 19–22. Defendants do not argue otherwise. Rather, Defendants argue (1) that sometime after the filing of this litigation, Mr. Sweet—and thus, Tennessee NAACP—was deprived of standing to sue because "Mr. Sweet was able to vote in-person in the August primary,"

5

meaning his injury was not concrete as to that election, Dkt. No. 88 at 3; and (2) that since the commencement of this litigation, "Mr. Sweet *can no longer* vote absentee" in the November general election, *id.* at 2. Neither argument disputes that Mr. Sweet—and therefore Tennessee NAACP—had standing to sue at the commencement of this litigation and thus, both are foreclosed by settled law.

As to the August election, there is no dispute that at the commencement of the litigation, Mr. Sweet was a first-time voter who was otherwise eligible to vote absentee. *See Fisher v. Hargett*, No. 20-0435-III (Davidson Cnty. Chancery Ct. June 4, 2020) (conferring eligibility to vote absentee to *all* Tennessee voters fearing COVID-19), *reversed in part* 604 S.W. 3d 381 (Tenn. 2020) (maintaining the trial court's injunction for the August 6, 2020 election). Mr. Sweet, however, could not vote absentee despite his eligibility to do so because of the First-Time Voter Restriction. Thus, Mr. Sweet—and so, Tennessee NAACP—had standing to sue at the commencement of the litigation. *See Tennessee Republican Party v. Sec. & Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017) (to establish standing, an organization plaintiff must establish that "at least one identified member *had suffered* or would suffer harm" by "nam[ing] the individuals who *were* harmed." (emphases added)).

Having established his harm—that he could not vote absentee—at the commencement of the litigation, the reason why Mr. Sweet did not ultimately vote *in person* in the August election is beside the point. The relevant question, as the Court has already found, is not whether voters like Mr. Sweet *could* vote in person, but whether they should be *required* to under the law. *See* Dkt. No. 79 at 53 (evaluating "the burden associated with forcing voters to show up in person to

6

vote and provide the identification required to vote").[2] Mr. Sweet was thus harmed—including at the commencement of the litigation—by not having the option to vote in person despite wanting to for fear of the coronavirus. *See* July 6 Decl. of Corey Sweet ¶ 5. That he did not ultimately vote at all only further shows the harm of his inability to cast his ballot absentee.

As to the November election, that Mr. Sweet may or may not "currently" be eligible to vote absentee under the eligibility criteria in November is likewise of no consequence to Tennessee NAACP's standing, in light of the fact that *at least* one of its members—Mr. Sweet—had standing to sue at the commencement of the litigation. *See Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 529 (finding that where the organizational plaintiff's named member met the standing requirements at the time the suit was filed, the fact that the member was no longer presently being harmed by the defendant, nor that he was no longer a member of the organization, did not divest him, and consequently the organizational plaintiff of standing or render the case moot); *see also American Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F. 3d 641, 645 (6th Cir. 2004) (ruling that post-complaint events did not deprive organizational plaintiff of standing or render case moot); *George v. Haslam*, 112 F. Supp. 3d 700, 706 (M.D. Tenn. 2015) ("Standing must exist at the time of filing of the complaint, and does not have to be maintained throughout all stages of the litigation."). The

---

[2] In his second Declaration, Mr. Sweet erroneously stated the date of the Tennessee primary as August 18, also mentioning that he was taking courses remotely that day. Counsel represents to the Court that this error was the result of faulty information as to the date of the primary provided to Mr. Sweet by counsel, and not picked up by counsel in their rush to alert the Court of Mr. Sweet's changed circumstances. This led Mr. Sweet to discuss what he was doing on August 18 instead of August 6. As Defendants correctly point out, the University of Memphis did not begin classes until August 17. Dkt. No. 88 at 3–4. So, while Mr. Sweet was accurate in recollecting that he might have been in remote classes on August 18, that fact obviously did not play into his decision not to vote in-person on August 6. Instead, Mr. Sweet decided not to vote in the August primary because he believed he was not allowed to vote by absentee ballot, and he feared exposure to the coronavirus, consistent with his initial declaration and with his second declaration. *See* July 6 Decl. of Corey Sweet ¶¶ 5–8; Sept. 10 Decl. of Corey Sweet at ¶¶ 6–7.

law requires only that organizational plaintiffs identify a "member [who] *had suffered* or would suffer harm" *at the commencement of the litigation*, not that the identified member—who may not even be a party to the suit—organize their life to ensure they remain harmed during the pendency of the litigation. *See Tennessee Republican Party*, 863 F.3d at 520. Because Tennessee NAACP met this requirement as to the start of the litigation, Mr. Sweet's current eligibility to vote absentee is simply irrelevant to the standing analysis.

### B. Because the Tennessee NAACP Had Standing at the Commencement of the Case, the Case Is Not Rendered Moot as to Its Claims Even If Mr. Sweet No Longer Has Standing.

While a party cannot lose standing that it possessed at the outset of litigation because of changed circumstances, changed circumstances can render a case moot. *Cleveland Branch*, 263 F. 3d at 525 ("[S]tanding concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct was occurring at the time the complaint was filed . . . while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation."). But the party asserting mootness possesses a "heavy burden" of persuasion. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Assn.*, 93 U.S. 199, 203 (1968)). Here Defendants have not even asserted mootness, let alone carried their burden. Indeed, that the First-Time Voter Restriction will remain in place absent an injunction, combined with the Court's finding that "[p]rotecting the rights of first-time, mail-registered voters to vote in the upcoming election appears germane to the NAACP's purpose," *see* Dkt. No. 79 at 22, should be dispositive of the mootness question because it demonstrates the continued existence of a justiciable case or controversy. Nevertheless, to the extent the Court construes Defendants' motion to suggest that Plaintiffs' claim is moot, Plaintiffs address the issue more fully here.

8

Again, *Cleveland Branch* is dispositive. There, the Cleveland Branch of the Ohio NAACP ("Cleveland NAACP") brought suit challenging recruitment practices of the City of Parma as racially discriminatory. *Cleveland Branch*, 263 F. 3d at 529. The court found that the Cleveland NAACP had standing through one of its members even though, after suffering harm from the City-Defendant's policies, the member did "not express a present concrete interest in obtaining employment" with the City-Defendant (*i.e.*, was not presently being harmed) and ended his membership in the Cleveland NAACP after the commencement of the litigation. *See id.* (explaining the harmful consequences—and incentives for gamesmanship for a defendant—of requiring a plaintiff to maintain standing throughout the litigation, rather than just at its commencement). The court also rejected the notion that the litigation had become moot, noting that the defendant had made no showing that the complained-of harm could not reasonably be expected to recur. *See id.* at 530–31 ("[A] case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur."). Instructively, the court evaluated the mootness question not as to the individual member that the Cleveland NAACP had identified as having been harmed at the commencement of the litigation— indeed, that individual was no longer a member of the organization, nor continuing to seek employment with the City-Defendant—but rather, more generally as to any affected individual (including Cleveland NAACP's other members). *See id*; *see also Waskul v. Washtenaw County Community Mental Health Center*, 900 F.3d 250, 257 (6th Cir. 2018) (construing *Cleveland Branch* as "appearing to hold that even if a named member's claims had become moot, the association retained standing because the named member had standing at the outset of the litigation"). This result is in accord with the Sixth Circuit's previous treatment of associational standing and the mootness doctrine. As it said in *Gillis v. U.S. Dept. of Health & Human Services*,

9

759 F.2d 565 (6th Cir. 1985), "once an organization has alleged actual injury to its members, *or any one of them*, it may then argue on behalf of the public interest." *Id.* at 572 (internal citations and quotation marks omitted) (emphasis original).

### C. <u>In Any Event, Interim Events Did Not Deprive Mr. Sweet of Standing.</u>

For the reasons stated above, the Court does not need to reach the question of whether Mr. Street *currently* has standing to sue. But even if it does, Mr. Sweet's changed circumstances do not affect his standing to sue: he is still subject to the First-Time Voter Restriction, which will bar him from voting absentee even if, between now and October 27 (the statutory deadline for applying for an absentee ballot in Tennessee), he becomes otherwise eligible to vote absentee.

Mr. Sweet is still a member of the Tennessee NAACP.[3] And he has unequivocally stated—both in his original declaration and his second declaration—that he does not want to vote in-person, if possible. Thus, he can still serve as a basis for the Tennessee NAACP's associational standing—if that were necessary despite the holding in *Cleveland Branch*—because (1) he is a member of the Tennessee NAACP, (2) who is a first-time voter who registered by mail or online, and (3) is foreclosed from voting absentee—regardless of his circumstances as of November 3—because the First-Time Voter Restriction prohibits him from doing so. Put differently, nothing in Mr. Sweet's second declaration affects this Court's finding "that [Mr.] Sweet has sufficiently established that the first-time voter restriction is applicable to him, and thus would prevent him from voting absentee, and that he otherwise has standing to challenge the first-time voter restriction." Dkt. No. 79 at 20.

---

[3] In accordance with the Court's directive, Plaintiffs have re-verified this fact, as stated more explicitly in Mr. Sweet's September 10 declaration and the declaration of Gloria Sweet-Love, his grandmother and President of the Tennessee NAACP. *See* Dkt. No. 86-1 at ¶ 3; Dkt. No. 86-2 at ¶ 5.

With respect to his eligibility to vote absentee in November, that Mr. Sweet thought on July 6 there was a chance that he would have to vote absentee "if" his then school reopened for in-person schooling in August is not a significantly different posture than he is in today, not knowing what circumstances will arise between now and October 27 that would render him eligible to vote by absentee ballot on November 3. While Mr. Sweet was eligible to vote absentee for the August election (but still unable to vote absentee as a result of the First-Time Voter Restriction), the Court understood that he might not be so eligible in November in light of the Tennessee Supreme Court's ruling narrowing absentee eligibility for that (and subsequent) elections. And this Court fully recognized the contingency of Mr. Sweet's circumstances in its Order: "*If* he has to return to college (at Xavier University in Louisiana) in person, rather than taking his classes remotely from Shelby County, he cannot afford to come home to Shelby County just to vote." Dkt. No. 79 at 20 (emphasis added).

Indeed, absentee voting eligibility is constantly in flux. Tennessee law allows voters up until 7 days before Election Day to apply for an absentee ballot. Tenn. Code § 2-6-202(a)(1), (d)(3). Voters can become eligible to vote by absentee ballot if they will be outside the county where they are registered during the early voting period and all day on Election; if they become hospitalized, ill or physically disabled and unable to appear at their polling place to vote, including if they contract COVID-19 or are at greater risk should they contract it; or if they become a caretaker of any such ill, disabled, hospitalized or COVID-vulnerable person. Thus, by its very nature, eligibility to vote by absentee ballot in Tennessee is contingent. But the First-Time Voter Restriction imposes a unique harm on first-time voters. While other voters enjoy the ability to request an absentee ballot up to 7 days prior to Election Day depending on their changing personal circumstances, first-time voters can never vote absentee.

11

As the Court correctly found, then, in addition to being harmed by the First-Time Voter Restriction when the suit was commenced, Mr. Sweet remains harmed by it in advance of the November election because, no matter his circumstances this Fall, he (like every other first-time voter, including those who are presently eligible to vote absentee) will be unable to vote by mail without an injunction from the Court. Put otherwise, while Mr. Sweet does not know if he will be out of the county during the relevant period, will be ill (particularly given the ongoing COVID-19 crisis), will be called to jury duty, or will otherwise be eligible to vote absentee, he does know that he will be barred absolutely from voting absentee regardless, absent this Court's order enjoining the First-Time Voter Restriction. Dkt. No. 79 at 21 ("A voter always has standing to challenge a statute that places a requirement on the exercise of his right to vote.").

Mr. Sweet had standing when this case began. Since then, he has, in fact, been injured by the First-Time Voter Restriction, and he stands to be injured in relation to the November election if the law is not enjoined. He still has standing.

### D. The Mootness Doctrine Is Inapplicable in any Event, Because the Claims Are Capable of Repetition, But Evading Review.

Even if, despite *Cleveland Branch*, standing were evaluated throughout the litigation as opposed to at its commencement, and even if Mr. Sweet's changed circumstances somehow affected his personal standing to serve as an exemplar member of the Tennessee NAACP by rendering the claim moot, this case would nevertheless present a justiciable case and controversy. Cases "in the election field are peculiarly 'capable of repetition, yet evading review.'" *American Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F. 3d 641, 646-57 (6th Cir. 2004) (quoting *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969)); *see also In re: 2016 Primary Election*, 836 F.3d 584, 588 (6th Cir. 2016) ("Challenges to election laws quintessential[ly] evade review because the remedy

sought is rendered impossible by the occurrence of the relevant election."). This case is no different.

Here, because Tennessee permits voters to apply for absentee ballots until October 27, in addition to those who are permanently eligible to vote absentee, any number of voters subject to the First-Time Voter Restriction—including Mr. Sweet and other members of Plaintiffs' organizations—may become eligible to vote absentee at a time when it will be too late to challenge the law.[4] *See* Sept. 10 Decl. of Corey Sweet at ¶ 9 (noting that the does not know whether he will be called to jury service, out-of-town, or, importantly, sick, before the close of the absentee request deadline). As discussed above, several of the eligibility criteria to vote absentee necessarily are constantly fluctuating in an average voter's life.

Moreover, any voter newly registered by Organizational Plaintiffs like Tennessee NAACP—whether by mail or online—will themselves become subject to the law, meaning the harm that Mr. Sweet suffered in August is likely—indeed, certain—to recur absent an injunction. *See, e.g.*, Decl. of Dawn Harrington at ¶¶ 2–6 (explaining that a member of Organizational Plaintiff, Free Hearts, is eligible to vote absentee, will register by mail to vote for the first time before the October 5, 2020 deadline, and will be unable to vote absent this Court's injunction);

---

[4] This Court has already recognized that such voters are out there, noting that over 128,000 new voters registered by mail in Tennessee last election cycle. Dkt. No. 79 at 57 n.139. Additionally, over 130,000 new registrants registered online in Tennessee last election cycle. U.S. Election Assistance Commission, 2018 Election Administration and Voting Survey, https://public.tableau.com/profile/u.s.election.assistance.commission#!/vizhome/EAVS2018Data VizLabeld_11_25/EACDataVizTool (select Tennessee and A5c New Registrations: Online). Plaintiffs' declarations show that they are continually registering members to vote. *See, e.g.*, Dkt. No. 40-5 at ¶¶ 17, 19, 28, 29, 30; Dkt. No. 40-6 at ¶ 30. Since the voters that Plaintiffs—including Tennessee NAACP—help to register to vote necessarily must all do so by either mail or online (as opposed to at the DMV, where, of course, Plaintiffs could not help them register), *all* of Plaintiffs' newly registered voters will be subject to this restriction the first time that they vote.

13

Decl. of Joy Greenwalt at ¶¶ 5–7 (noting that having registered to vote in September 2020, and despite being otherwise absentee eligible, she will be unable to vote this November because of the First-Time Voter Restriction). Meanwhile other members, perhaps including Mr. Sweet, will stop being subject to the law if they choose to vote in-person. Such constantly fluctuating circumstances are *exactly* why the mootness doctrine is not relied on to deprive plaintiffs of standing in cases like the one presented here, and why this Court should decline to invoke it here as well.

### E. There Is No Reason for this Court To Revisit Its *Anderson/Burdick* Analysis.

Defendants argue that, because Mr. Sweet is no longer attending school out-of-state, somehow that affects this Court's thorough *Anderson/Burdick* analysis. Plaintiffs will not belabor the point, and will rely wholly on this Court's analysis, except to note that, in its comprehensive 30-page discussion of both the burden and state interest sides of the *Anderson/Burdick* test, nowhere did the Court even mention Mr. Sweet. *See* Dkt. No. 79 at 25–55. Further, as noted above, the Court referenced the tens of thousands of other voters whose right to vote was potentially at risk in its application of the *Anderson/Burdick* balancing test. Dkt. No. 79 at 57 n.139 And, as also noted above, once an organizational plaintiff has standing on the basis of a member's standing, the organization can press its claims in the public interest. *Gillis*, 759 F.2d at 572.

## II. The Court Should Deny the Motion to Stay.

Defendants' motion to stay is based on a single fact: that Plaintiffs filed the initial Sweet declaration with their reply briefing on the Motion for Preliminary Injunction. Defendants have known this fact since July 7, yet they waited over two months to raise any objection, raising the issue only after the Court granted Plaintiffs' motion.

Defendants' primary authority, *Democracy North Carolina, et al. v. The North Carolina State Board of Elections*, 2020 WL 4288103 (M.D. NC July 27, 2020), is instructive. There, the

14

plaintiffs had filed a motion for preliminary injunction on May 22, 2020, and amended it on June 18, relying on the previously filed exhibits. On July 2, with their reply, plaintiffs filed five voluminous declarations, including two by expert witnesses. Rather than waiting to see how the motion was decided, defendants acted quickly, filing a motion to strike the declarations a mere four days later, and seeking to take additional discovery in connection with plaintiffs' filings. Here, in contrast, Defendants waited until the motion was decided against them to raise any concerns about Mr. Sweet's declaration. Furthermore, the declaration at issue here does not pose the same issues as those raised in *Democracy North Carolina*. Plaintiffs filed a single, two-page declaration with their reply, in direct response to arguments made by Defendants as to Plaintiffs' evidence on associational standing.

Even were it necessary for Plaintiffs to seek leave before filing the declaration with their reply, Defendants had months to challenge Plaintiffs' failure. If Defendants were concerned about the propriety of submitting the declaration on reply, they could have filed a motion to strike, or could sought to depose the new declarant, as did the defendants in *Democracy North Carolina*. They chose not to. Instead, Defendants sat on the argument, and raised their purported concerns about the Sweet Declaration being filed as part of Plaintiffs' reply brief only after learning that they lost on the Motion for Preliminary Injunction.

In the interim, the Court, well aware that the Sweet declaration was filed with Plaintiffs' reply papers, considered the declaration and relied upon it in part in issuing its decision, while noting that Defendants had done nothing to challenge it. The Court acted appropriately in considering the declaration. Defendants have continually complained about Plaintiffs' alleged delay in filing this action; they should not now be permitted to benefit from sleeping on their own

15

Case 3:20-cv-00374   Document 92   Filed 09/15/20   Page 15 of 18 PageID #: 2706

rights by belatedly challenging Mr. Sweet's declaration on a technicality. Defendants' objections are out of time, and the Motion to Stay should be denied.[5]

The Motion to Stay should also be denied because it is futile. Defendants request a stay of the Order Granting Preliminary Injunction until such time as the Court can resolve Defendants' Motion to Dismiss the First-Time Voter claim for lack of standing. *See* Dkt. No. 84 at 4. But as discussed above, and as the Court has already held, Plaintiffs *have* standing to assert the First-Time Voter claim. Thus, a stay of the Order preliminarily enjoining the First-Time Voter Restriction would serve no purpose other than delay.[6]

## **CONCLUSION**

For the reasons set forth above, the Motion to Reconsider and the Motion to Stay should be denied.

---

[5] *See also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

[6] A stay would also harm Organizational Plaintiffs' members—and Tennesseans generally—who are first-time voters and looking to the Court to finally resolve for them the question of whether they can vote by mail in this November's election. *See,* e.g., Decl. of Dawn Harrington at ¶¶ 2–6 (describing a first-time voting member who will not be able to vote at all if she is not permitted to vote absentee); Decl. of Joy Greenwalt ¶¶ 5–7 (same as to herself). Thus, to the extent counsel technically erred by not including Mr. Sweet's declaration with their original motion for preliminary injunction, the Court should decline to rely on such a technical error to extend Tennesseans' uncertainty.

Dated: September 15, 2020                           Respectfully submitted,

    */s William L. Harbison*

| | |
|---|---|
| Danielle Lang* | William L. Harbison (No. 7012) |
| Ravi Doshi* | Lisa K. Helton (No. 23684) |
| Molly Danahy* | Christopher C. Sabis (No. 30032) |
| Jonathan Diaz* | Christina R.B. López (No. 37282) |
| Campaign Legal Center | Sherrard, Roe, Voigt & Harbison, PLC |
| 1101 14th Street NW, Suite 400 | 150 3rd Avenue South, Suite 1100 |
| Washington, DC 20005 | Nashville, TN 37201 |
| Tel.: (202) 736-2200 | Phone: (615) 742-4200 |
| dlang@campaignlegalcenter.org | Fax: (615) 742-4539 |
| rdoshi@campaignlegalcenter.org | bharbison@srvhlaw.com |
| mdanahy@campaignlegalcenter.org | lhelton@srvhlaw.com |
| jdiaz@campaignlegalcenter.org | csabis@srvhlaw.com |
| | clopez@srvhlaw.com |

Ezra Rosenberg*
Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW Suite 900
Washington, DC 20005
Tel.: (202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

*Admitted Pro Hac Vice

17

Case 3:20-cv-00374   Document 92   Filed 09/15/20   Page 17 of 18 PageID #: 2708

**Certificate of Service**

I, William L. Harbison, certify, pursuant to Local Rule 5.01, that on this 15th day of September, 2020, the foregoing Opposition was served via the Court's CM/ECF filing system on the following:

Janet Kleinfelter
Andrew B. Campbell
Alexander Rieger
Matthew D. Cloutier
Office of the Tennessee Attorney General
301 6th Ave. N.
Nashville, Tennessee 37243
janet.kleinfelter@ag.tn.gov
andrew.campbell@ag.tn.gov
alex.rieger@ag.tn.gov
matt.cloutier@ag.tn.gov

*Counsel for Defendants*

                                               */s William L. Harbison*