IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 3-20-cv-00374 JUDGE RICHARDSON |
| TRE HARGETT, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Reconsider (Doc. No. 87, "Motion"). Defendants ask the Court to reconsider its September 9, 2020 Preliminary Injunction Order (Doc. No. 80, "Preliminary Injunction Order"), which granted Plaintiffs' Motion for Preliminary Injunction (Doc. No. 40, "Underlying Motion") to the extent of enjoining the enforcement of Tenn. Code Ann. § 2-2-115(b)(7)'s requirement that first-time voters who registered to vote by mail must appear in person to vote ("first-time voter requirement"). For the reasons stated herein, the Motion is **DENIED**.

## BACKGROUND

On September 9, 2020, this Court enjoined, pending further order of the Court, the first-time voter requirement of Tenn. Code Ann. § 2-2-115(b)(7), insofar as it provides that those who registered to vote in Tennessee by mail must "appear in person to vote in the first election the person votes in after such registration becomes effective." (Doc. Nos. 79 and 80). Defendants now ask the Court to reconsider its Preliminary Injunction Order based upon the issue of standing, which Defendants claim does not exist for any Plaintiff.

## MOTIONS TO RECONSIDER

The kinds of arguments that can be raised on a motion for reconsideration are limited. *Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-cv-0325, 2019 WL 7482144, at *1 (M.D. Tenn. Mar. 18, 2019). A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple. *Id.* Nor is a motion for reconsideration properly grounded on a request that a court rethink a decision already made. *Id.* District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Id.* (citing *Al-Sadoon v. FISI* Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002) and *Zagorski v. Haslam*, Case No. 3:18-cv-01205, 2018 WL 5454148, at *1 (M.D. Tenn. Oct. 29, 2018)).

In general, a motion to reconsider must be based on one of the grounds available for motions to alter or amend judgment or on a showing that the court clearly overlooked material facts or controlling law that were presented by the movant in litigating the underlying motion and that would result in a different disposition. *See Hanna*, 2019 WL 7482144, at *1. The Court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* (citing *United States v. Tenn. Walking Horse Breeders' and Exhibitors' Ass'n*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017)). Such motions are entrusted to the Court's sound discretion. *Id.* A motion to alter or amend is not an opportunity to re-argue a case and should not be used to re-litigate previously considered issues, to submit evidence which could have been previously submitted in the exercise of reasonable diligence, or to attempt to obtain a reversal of a judgment by offering the same arguments previously presented. *Id.*

In addition, on a motion for reconsideration, "'advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.'" *Soloway v. Huntington Nat'l Bank*, No. 1:12-cv-507, 2012 WL 12883652, at *1 (W.D. Mich. Dec. 18, 2012) (quoting *Weese v. Schukman*, 148 F.R.D. 279, 280 (D. Kan. 1993)); *see also Evanston Ins. Co. v. Cogswell Properties, LLC,* 683 F.3d 684, 692 (6th Cir. 2012) ("Arguments raised for the first time in a motion for reconsideration are untimely[.]").

Generally, relief under Rule 59(e) is an "extraordinary remedy" restricted to those circumstances in which the moving party has set forth facts or law of a strongly convincing nature that indicate that the court's prior ruling should be reversed. *Harris v. Perry*, No. 2:12-cv-02668-STA-dkv, 2016 WL 5396701, at *3 (W.D. Tenn. Sept. 27, 2016). The Sixth Circuit has made clear that the standard for manifest injustice is "an exacting standard" and that a successful Rule 59(e) motion must "clearly establish a manifest error of law." *Heithcock v. Tenn. Dept. of Children's Servs.*, No. 3:14-CV-2377, 2015 WL 5970894, at *1 (M.D. Tenn. Oct. 14, 2015).

## RELEVANT PROCEDURAL HISTORY

As indicated above, a motion to reconsider turns in part on what information the movant had, and what grounds the movant argued, the first time around on the underlying motion. Accordingly, the Court will next: (a) summarize the sequencing of the relevant aspects of the parties' arguments regarding standing leading up to the Court's decision, set forth in its September 9, 2020 memorandum opinion ("Opinion") accompanying the Preliminary Injunction Order, that standing exists; (b) make some observations about Defendants' clear ability and imperative to make, prior to the issuance of the Opinion, the very arguments they now make for the first time via the Motion; and (c) draw a conclusion from that sequencing and those observations.

Plaintiffs' standing was first challenged in Defendants' response in opposition to the Underlying Motion (Doc. No. 46). Therein, Defendants in pertinent part addressed standing as to the organizational Plaintiffs in particular, noting correctly that such a plaintiff has standing if it has either so-called organizational standing or so-called associational standing. (Doc. No. 46 at 15).[1] Defendants then noted correctly that an organization has associational standing if (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. (*Id.* at 16). Defendants also noted that requirement (a) needs to be satisfied only with respect to a single member of the organization, and not as to multiple "members" or its "members" generally. (*Id.* at 17); *see also Waskul v. Washtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 260 (6th Cir. 2018) (Stranch, J., dissenting) ("The standard for evaluating associational standing requires the district court to assess whether WACA demonstrates that a single member with a cognizable injury had standing to sue in his or her own right." (citing *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489–90 (6th Cir. 2004))); *see also United Food & Commercial Workers v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996). Defendants noted, though, that this member had to be specifically identified when, as presumably would be true with respect to the challenged first-time voter requirement, not all members of the organization are affected by the challenged law.

Defendants then noted that none of the organizational Plaintiffs had specifically identified a particular member who would have standing. (Doc. No. 17). Accordingly, Defendants argued

---

[1] Herein, cited page numbers are the numbers stamped on the applicable pages by the Clerk's Office, which may differ from the page numbers placed on the document by the author/filer of the document.

that all of the organizational Plaintiffs lacked associational standing. (*Id.* at 18). Thereafter, however, in their July 7, 2020 reply in support of the Underlying Motion, Plaintiffs asserted:

> Organizational Plaintiffs are able to identify a specific member who is directly injured by the first-time voter requirement. *Cf.* Opp. at 17. Corey Stewart is a first-time voter and member of the Tennessee NAACP who registered to vote online earlier this year. Mr. Stewart is unsure whether he must vote in person or not, given the inconsistent instructions promulgated by the State and his local election commission in Shelby County. *See* Stewart Decl. ¶ 8. Indeed, according to his local election commission, Mr. Stewart may not vote by mail in the August election. *See id.* ¶ 6. Mr. Stewart does not want to vote in person, however, because he does not want to expose himself or his family members to COVID-19. *See id.* ¶¶ 6–9 (also noting that if his university resumes in-person classes, he does not have the money to travel back to the state to vote in person).

(Doc. No. 54 at 12-13).[2] As it turns out, "Stewart" was a misnomer; the person in question was Corey Sweet, as made clear in the declaration of Sweet (Doc. No. 54-1) filed contemporaneously with Plaintiffs' reply.[3] The Court, in its Opinion, later summarized Sweet's averments in that declaration:

---

[2] "The Tennessee NAACP" is shorthand for Plaintiff Tennessee State Conference of the NAACP.

[3] One might be forgiven for harboring certain suspicions based on this mistake. One could speculate that Plaintiffs' failure here to even provide Sweet's correct name indicates that they were not previously familiar with Sweet and that they in effect grabbed him off the proverbial street to pose as a purported member of the Tennessee NAACP. But it seems clear that this is not what happened; the record reflects that his grandmother is the president of the Tennessee NAACP, (Doc. No. 86-1), and that Sweet thus very likely would have been well known to the leader of the organization, rather than a stranger disingenuously pressed into service to satisfy the standing requirement. The more likely explanation is that counsel for Plaintiffs for whatever reason simply got the last name wrong.

Having said that, the Court is constrained to express its disappointment in the repeated affirmative errors, quite apart from issues of omission, that Plaintiffs (or Sweet) are having in getting the facts straight regarding Sweet. Whether it is his name, or his reference to "voting" instead of "registering" as apparently intended, (Doc. No. 79 at 20 n.11) or his reference to the August 18 primary that was actually held on August 6, (Doc. Nos. 86-2 at 3), the mistakes keep coming. The last mistake is particularly concerning; as Defendants correctly note, (Doc. No. 88 at 3-4), the incorrectness of the date specifically undercut the particular point Sweet was trying to make there (albeit one the Court does not find material on the standing issue as it sits right now). Also, the discrepancy between 6 and 18 is not explainable as a typographical error. And the mistake

Sweet occasionally attends events of one of the Organizational Plaintiffs, the Tennessee Conference of the NAACP ("NAACP"). He registered to vote, online on Shelby County Election Commission website, in late spring and, therefore, this election will be his first time to vote. He does not want to vote in person for fear of exposing himself and/or his family to COVID-19. If he has to return to college (at Xavier University in Louisiana) in person, rather than taking his classes remotely from Shelby County, he cannot afford to come home to Shelby County just to vote.

(Doc. No. 79 at 19-20) (footnotes omitted). As the Court noted in its Opinion, it found these averments sufficient to show that Sweet himself had standing to challenge the first-time voter restriction. But as the Court noted, the declaration was far from iron-clad. The Court first noted:

The Court is constrained to note that Plaintiffs' evidentiary showing that Sweet is a "member" of the NAACP is far from strong. Sweet avers only that he occasionally attends NAACP events, not that he is a member of NAACP. However, Defendants have not (in connection with their motion to dismiss, Doc. No. 61, filed after Sweet's Declaration was first filed) contested that he is a member. Also, Plaintiffs have expressly asserted in their briefing that Sweet is a member (Doc. No. 78 at 10 & n.12), and also more specifically that his Declaration "explain[s]" that he is a member, (*id.* at 15-16), and the Court accepts that representation. However, Plaintiffs would be well advised to draft declarations more explicit about such things, *and they should advise the Court immediately if, contrary to the Court's current understanding, Sweet is not actually a member of NAACP.*

(*Id.* at 19 n.10). Moreover, the Court noted that the declaration was submitted in advance of, and (based on its precise content) with an eye towards, the August 6 primary, and not the November 3 general election. (*Id.* at 20 n.12). As the Court implied, this raised the question as to whether it should even be construed as applicable to the November 3 general election. (*Id.*).

---

was made one day after the Court had in essence advised Plaintiffs to be more careful with the drafting of their declarations. (Doc. No. 79 at 19 n.10; *Id.* at 20 n.11). None of this helps the credibility of Sweet or Plaintiffs. Ultimately, despite recognizing specific reasons to be concerned about the accuracy of the content of Sweet's declarations, the Court continues to credit the aspects of his declarations that are material at this juncture; these aspects concern very straightforward matters as to which Sweet is not asserting anything close to inherently incredible, and the Court notes that he has, and has reason to be aware of, a distinct disincentive to be untruthful in his declarations.

In other words, it was plain for all to see that Sweet's declaration had some holes that would render it vulnerable to attack from any Defendant inclined to attack it as insufficient to establish Sweet's own standing or the fact that he was a member of the Tennessee NAACP (and thus someone on whom the Tennessee NACCP could base associational standing). In the Court's assessment, these holes objectively were readily apparent and would have been exploited by any Defendant who truly wished to claim not just generally that Plaintiffs lacked associational standing, but rather specifically that the Tennessee NAACP did not have associational standing through Sweet. True, the Court ultimately found that these holes did not prevent a finding that Sweet himself had standing and was a member, but they patently supported an objectively colorable attack on Sweet's standing and alleged membership in the Tennessee NAACP.[4]

---

[4] This finding, however, was based in part on the fact that Defendants did not rely on, or further explicate the relevance of, these weaknesses in Sweet's declaration, and it is not inconsistent with the suggestion that anyone serious about challenging Sweet's own standing should and would have jumped on these weaknesses.

The Court notes that nothing herein is meant to suggest that its finding that the Tennessee NAACP has associational standing (through Sweet) was based in any way on some notion that Defendants had "waived" the issue of standing via the manner in which they responded (or did not respond) to Plaintiffs' claim of such standing. The Court realizes, as is axiomatic, that subject-matter jurisdiction (of which standing is a necessary part) is not waivable. The Court did not find associational standing to exist based on some notion of waiver. Nor did the Court deem Defendants to have impliedly conceded the notion that Sweet individually had standing, that he was a member of the Tennessee NAACP at the relevant time, or that the Tennessee NAACP had standing based upon the standing of Sweet. To the contrary, it was clear to the Court that Defendants were conceding nothing. On the other hand, Defendants did signal an unwillingness to take on the challenge of tackling the specific claim of associational standing made by Plaintiffs.

The Court found associational standing to exist based not on any purported waiver or concession by Defendants, but rather on its construction of the contents of Sweet's declaration and the fact that, as to omissions that conceivably could have inclined the Court to find Sweet's declaration inadequate, the Court ultimately was not so inclined—in part because Defendants failed to explain why such omissions were fatal to a showing that Sweet personally had standing and was a member of the Tennessee NAACP.

In short, the problem for Defendants on the instant Motion is not that Defendants waived or conceded some or all elements of associational standing; they did not in fact do so. The problem is that Defendants, in refuting the existence of any aspect of associational standing, should have

And yet Defendants made no such attack in opposing the Underlying Motion. They claim that they had no opportunity to do so because "[u]pon the submission of Plaintiff's Reply, briefing on the [Underlying Motion] was closed." (Doc. No. 84 at 2). But briefing was not necessarily closed. Defendants could have sought leave to file a sur-reply in order to attack Plaintiffs' brand-new assertion of associational standing through Sweet. Defendants presumably full well know that they can, and know how to, seek leave to file a sur-reply if they see a need to do so; as Defendants surely know, a non-movant can (and should, on important matters newly raised in the movant's reply in support of the motion) move for leave to file a sur-reply. Indeed, in connection with this very Motion, Defendants have shown even more assertiveness and wherewithal than is required to seek leave to file a sur-reply; they have taken the step—far less common than seeking leave to file a sur-reply—of seeking leave to file a "sur-response," by which they meant a movant's filing coming after the non-movant's sur-reply. (Doc. No. 100). And yet Defendants did not seek leave to file a sur-reply to either (a) challenge the veracity, persuasiveness, or sufficiency of Sweet's declaration or (b) otherwise contest in any way that Sweet personally had standing or that the Tennessee NAACP had standing based on Sweet's standing.

Seeking to explain away this inaction, Defendants claim that Plaintiffs acted belatedly and thus improperly in filing the declaration of Sweet when they did, *i.e.,* for the first time in Plaintiffs' reply in support of the Underlying Motion. (Doc. No. 84 at 2 & n.2). Specifically, Defendants do not claim that Plaintiffs acted too late in asserting the Tennessee NAACP's associational standing through Corey Sweet for the first time in Plaintiffs' reply brief. Defendants here assert not the

---

but did not make the arguments upon which they rely belatedly, in the Motion: that Sweet lacks his own standing, that Sweet has not been shown to be a member of the Tennessee NAACP at the relevant time, and that the Tennessee NAACP therefore cannot claim standing through Sweet.

alleged tardiness of Plaintiffs' *assertion* of associational standing, but rather only the (alleged) tardiness of the *evidence* (Sweet's declaration). Assuming *arguendo* that Defendants' (rather technical though not necessarily flawed)[5] assertion regarding the tardiness of Sweet's declaration is valid, the fact remains that Plaintiffs' assertion of associational standing through Sweet was *not* tardy. It was made by Plaintiffs at their first opportunity after their standing was first challenged by Defendants. The argument was timely, and if Defendants had anything to say about it, they should have sought to do so before the Court ruled on the Underlying Motion—then, and *not* now, would have been the time to complain about the tardiness of the declaration.

---

[5] Defendants claim that a movant may submit new *evidence* in replying in support of a motion only if it is in response to *evidence* submitted by the non-movant in opposing the motion. Defendants say that they submitted no *evidence* in challenging standing in their brief in opposition to the Underlying Motion, but rather merely relied on the lack of adequate allegations of associational standing contained in the Amended Complaint.

    To the extent that Defendants perhaps imply that the issue on the Underlying Motion should have been restricted to whether the Amended Complaint adequately alleged standing, the Court must reject the implication. As the Court noted in its Opinion:

> In deciding a motion for preliminary injunction, a court may consider the entire record, including affidavits and other hearsay evidence. *Sterling v. Deutsche Bank Nat'l Tr. Co.,* 368 F. Supp. 3d 723, 725 (S.D. N.Y. 2019); *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018). In conducting the preliminary injunction analysis, the Court is not limited to the four corners of the complaint but rather may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted).

(Doc. No. 79 at 17 n.9).

All of which is to say that in opposing the Underlying Motion, Defendants did not take the opportunity to make any argument that Sweet lacked standing or was not a member of the Tennessee NAACP—including any argument that his declaration was not properly before the Court—even after the imperative to do so had become clear. As discussed below, this fact bears significantly on the propriety of granting a motion to reconsider.[6]

Thereafter, Defendants doubled down on their non-responsiveness to the assertion that the Tennessee NAACP had standing based on the alleged personal standing of Sweet. Specifically, on August 10, 2020, Defendants filed a motion to dismiss the Amended Complaint in this case based on the alleged lack of standing of all Plaintiffs. (Doc. No. 61, "Motion to Dismiss"). In so doing, of course, Defendants necessarily had to take (and did take) the position that no organizational Plaintiff had associational standing. In support of that position, Defendants stated in their brief in support of the Motion to Dismiss, "[T]he Organizational Plaintiffs have failed to identify specifically any of their members who are impacted by the statute. Thus, the Organizational Plaintiffs have no basis to challenge it." (Doc. No. 62 at 16). But Defendants here overlooked the fact that, prior to the filing of the Motion to Dismiss, Plaintiffs *had* identified one member of the Tennessee NAACP (Sweet) who allegedly was impacted by the statute (and otherwise had standing of his own). And yet Defendants simply ignored this.[7]

---

[6] Again, the Court emphasizes that it did not take this non-responsiveness to the Tennessee NAACP's claim of associational standing as suggesting a (legally impossible) waiver of any lack of subject-matter jurisdiction, nor as any kind of concession that Sweet had personal standing or that the Tennessee NAACP thereby had associational standing. And it contributed to the Court's finding of subject-matter jurisdiction only to the extent indicated in the footnote above.

[7] Defendants offer a valid reason for why they did not respond, prior to the issuance of the Preliminary Injunction Order, to the assertion that the Tennessee NAACP had associational standing through Sweet made by Plaintiffs *specifically in their brief* (Doc. No. 78 at 15-16) *in opposition to the Motion to Dismiss*. Specifically, as Defendants note, the time for Defendants to

As Defendants were aware might happen, (Doc. No. 62 at 3 n.1), the Court considered the Underlying Motion "in concert" with the Motion to Dismiss. And in considering the Motion to Dismiss, it was not lost on the Court that for the second time (*i.e., in connection with a second motion*), Defendants argued neither that Sweet did not have his own standing nor that the Tennessee NAACP lacked standing even if Sweet had standing (for example, because Sweet was not one of its members).

This is puzzling. Defendants had every reason to make this argument, which had openly been implicated in Plaintiffs' briefing, in order to further their more general argument that none of the organizational Plaintiffs had associational standing inasmuch as (supposedly) none had identified a particular member with his or her own standing. And yet, for whatever reason, Defendants never made the argument in advance of the Court's issuance of the Preliminary Injunction Order.

Prior to the time the Court issued the Preliminary Injunction Order, it was conceivable that Defendants could have undercut—by presenting evidence or argument—the ability of Sweet's declaration to support Plaintiffs' assertion that Sweet had his own standing and was a member of the Tennessee NAACP. But Defendants did no such thing, failing to even acknowledge that assertion or Sweet's declaration at all. Considering Sweet's declaration as it did—*i.e.*, without anything from Defendants to rebut either Sweet's declaration or Plaintiffs' assertion that Sweet

---

reply to Plaintiffs' brief at Doc. No. 78 had not yet expired at the time the Preliminary Injunction Order was issued. (Doc. No. 84 at 3). Fair enough. But that does not change the fact that in their initial brief (Doc. No. 62) in support of the Motion to Dismiss, in claiming that Plaintiffs "have failed to identify specifically any of their members who are impacted by the statute," (Doc. No. 62 at 16), Defendants ignored what was plain for all to see: Plaintiffs previously *had* identified an individual (Sweet) that they claimed was a member who was impacted by the first-time voter requirement.

himself had standing and that the Tennessee NAACP accordingly had associational standing—the Court on balance accepted that assertion. And thus the Court found the Tennessee NAACP to have standing for purposes of the Underlying Motion.

The Court did so despite the above-referenced gaps in Sweet's declaration, which the Court concluded overall did not defeat the finding that standing had been shown sufficiently for the current phase of litigation. In pointing out those gaps, the Court was well aware that it may be inviting exactly what it received here—a motion to reconsider. But the Court believed that it was well worth it, both: (1) to explain why the Court found an adequate showing of standing for now despite its realization (not grasped by the parties, as far as the record then showed) of the gaps in Sweet's declaration; and (2) to put the onus on Plaintiffs to come clean and admit that Sweet was in fact not a member of the Tennessee NAACP if their implication—and the Court's inference—that he was a member was incorrect.

Two days after the Preliminary Injunction Order was issued, Defendants filed the Motion. But one day before that, they had filed a motion to stay the Preliminary Injunction Order (Doc. No. 83) based on the same grounds underlying the Motion, *i.e.*, the purported need for the Court to revisit whether the Tennessee NAACP in fact had associational standing based on the supposed personal standing of Sweet. This was the first time Defendants had challenged the specific proposition that the Tennessee NAACP had standing via its purported member, Sweet. In explaining why they had not previously made such a challenge, Defendants wrote:

> Defendants did not address the Sweet Declaration at that time, because the Declaration (a) did not contain any averment by Mr. Sweet of "membership" in any of the Plaintiff Organizations and (b) contained averments which pertained *only* to the August primary election which—by the time the Motion to Dismiss was filed—had *concluded*.

(Doc. No. 84 at 3).

The Court will refrain from speculating as to the degree to which Defendants had actually spotted these issues before the Court pointed them out in its Opinion. What is not speculative is that, prior to the issuance of the Preliminary Injunction Order: (1) the issue had been squarely raised as to whether the Tennessee NAACP had associational standing via Sweet; (2) the issue had not gone away, as Plaintiffs were continuing to stand behind their arguments for standing (which would include the argument for Sweet-based standing for the Tennessee NAACP) even after it was clear that such arguments no longer had relevance to the August 6 primary;[8] (3) it therefore would very much have behooved Defendants not to have ignored the issue; (4) prudence dictated that Defendants not ignore the issue on the mere grounds that the declaration omitted content regarding Sweet's membership or intent to vote in the general election; and (5) prudence dictated that Defendants instead expressly assert these omissions (and, for that matter, the alleged tardiness of Sweet's declaration) as reasons why the issue should be resolved definitively in their favor.

In conclusion, the appropriate time to first raise the argument(s) that at the relevant time, Sweet did not have his own standing—or that, even if he did, the Tennessee NAACP still lacked associational standing because Sweet was not a member—was prior to the issuance of the Preliminary Injunction Order, not after.

---

[8] On July 21, the Court denied the Underlying Motion insofar as it sought a preliminary injunction in advance of the August 6 primary. (Doc. No. 55). On July 23, the parties filed their joint proposed case management order, which noted in pertinent part that "Defendants have denied that any Plaintiff has standing to bring any of the asserted claims. Plaintiffs have argued otherwise, including in their Motion for Preliminary Injunction." (Doc. No. 58 at 4). Plaintiffs thus indicated their persistence—which should have come as no surprise—in their previously asserted arguments for standing. Moreover, nine days before the Court issued its Preliminary Injunction Order, in its filings opposing the Motion to Dismiss, Plaintiffs again indicated their continuing reliance on the Tennessee NAACP's associational standing through Sweet, both by its argument (Doc. No. 78 at 15-16) and by its refiling of Sweet's (first) declaration (Doc. No. 78-8).

**DISCUSSION**

## I.    Standing

Although the Court did not specifically point this out in its Opinion, at the preliminary injunction stage, the burden on the Plaintiffs is not to show that they have standing, but rather to show that they are *likely* to be able to show standing. *See Waskul,* 900 F.3d at 255–56 & n.4; *Online Merchants Guild v. Cameron*, --- F. Supp. 3d ---, 2020 WL 3440933, at *3 (E.D. Ky. 2020) ("The Sixth Circuit has explained that an 'affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing.'" (quoting *Waskul*, 900 F.3d at 260 n. 5)).[9] This accords with the rule, which was explained in the Opinion, that "[e]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof; *i.e.*, with the manner and degree of evidence required at the applicable stage of the litigation." (Doc. No. 79 at 16 (citing *Fair Elections Ohio v. Husted,* 770 F.3d 456, 459 (6th Cir. 2014) and *Jacobson v. Florida Sec'y of State,* 957 F.3d 1193, 1201 (11th Cir. 2020))). So it is insufficient for Defendants to show some reason to doubt that Plaintiffs could ultimately show standing, as long as Plaintiffs show a substantial likelihood of standing. Plaintiffs' burden at this stage is one that allows for some imperfection in Plaintiffs' showing.

So to obtain the relief they seek via the Motion, Defendants must present an argument that: (1) is properly cognizable on a motion for reconsideration; and (2) either shows some error in the Court's prior ruling regarding standing or shows the absence of a likelihood, on the instant record,

---

[9] *Online Merchants Guild's* citation to n.5 of *Waskul* appears to be in error; the intended reference plainly was to n.4 instead.

that at least one Plaintiff has standing. As set forth below, the Court finds that Defendants have

done neither. So for each of two alternative reasons, the Motion must be denied.

A.  *Defendants' motion to reconsider fails because Defendants' challenge to the associational standing of the Tennessee NAACP is a new argument not cognizable on a motion to reconsider.*

In their Motion to Reconsider, Defendants argue that Plaintiffs have not shown that the

Tennessee NAACP has standing through Sweet to challenge the first-time voter requirement,

because (a) Sweet himself in fact lacked standing when this lawsuit was filed because he was not

eligible to vote absentee at that time; and (b) Plaintiffs have not shown that Sweet was a member

of the Tennessee NAACP at that time, as opposed to some later time.[10]

_____

[10] Defendants argue that Plaintiffs have not proven that Sweet was a member of the Tennessee NAACP "as of May 1, 2020, which is the critical time to establish associational standing." (Doc. No. 97 at 4, n.2). The Court will grant Defendants the point that the declarations submitted by Plaintiffs on this issue are not ideally precise, as none speaks in terms of Sweet's membership other than in the present tense, when the relevant time predated the execution of those declarations. (As discussed herein, the relevant time was June 12, and not May 1 as Defendants here claimed). A party litigates with such imprecision at its peril, doubtless. But even if Defendants had pointed out this imprecision prior to the Court's issuing of its Opinion, it still would not necessarily have made it erroneous for the Court to conclude that Plaintiffs were *likely* eventually to show standing.

If, as the Court found in the Opinion, Sweet's declaration was at least minimally adequate to show the likelihood of membership as of the date it was executed (July 6), it may well have been adequate to show the likelihood (though not certainty) of membership as of 24 days earlier. Still less does Plaintiffs' imprecision mean that Plaintiffs (litigating with better precision) are not likely ultimately to show associational standing via Sweet; the record that he is a member is now stronger than it was before the Court issued its Order. Of course, it is still conceivable that Sweet became a member of the Tennessee NAACP only after June 12, and if so, Plaintiffs would be unable to show associational standing through Sweet and would have to prevail on their alternative argument that at least one of them has organizational standing in its own right. But for purpose of the instant Motion, the primary point is that this argument—that Plaintiffs have offered no evidence of Sweet's membership as of the pertinent date in question—is now being raised for the first time.

And the Court has to ask: if the failure of such declaration(s) to explicitly address the timeframe (date) relevant for standing purpose is so telling, why did not Defendants bring up such failure before the Preliminary Injunction Order was issued? Why did not Defendants note for the Court that the only then-filed declaration possibly bearing on Sweet's membership—*i.e.*, Sweet's

The Court finds, as explained in detail above, that this two-part argument is (in each of its two components) new, being first presented in connection with the Motion, despite Defendants' ample motive and opportunity to present it prior to the Court's decision on the Underlying Motion.[11] The argument therefore is not properly cognizable on a motion to reconsider, and the Court has the discretion to, and does, reject the Motion on that basis alone. *See Evanston Ins. Co.*, 683 F.3d at 692 (finding no abuse of district court's discretion in denying motion for reconsideration that raised new arguments that movant had multiple opportunities to present prior to the decision as to which movants sought reconsideration). Indeed, if anything, the Court would lack the discretion to consider this new argument, inasmuch as "a motion for reconsideration may not be used to raise issues that could have been raised in the previous motion. . . ." *Aero–Motive Co. v. Great Am. Ins.,* 302 F. Supp. 2d 738, 740 (W.D. Mich. 2003). And the fact that Defendants

first declaration—did not explicitly address the pertinent date? Why did Defendants instead ignore the declaration (and the entire issue concerning associational standing through Sweet) altogether?

Similarly, Defendants rely on the lack of evidence that Sweet has paid dues as, according to his grandmother's declaration (Doc. No. 86-1) filed since the Preliminary Injunction Order was issued, a member would have. (Doc. No. 97 at 4). The Court grants Defendants that Plaintiffs have not buttoned down everything as much as they might have. But Defendants' point here is just another (new) way of arguing that Plaintiffs have not established that the Tennessee NAACP has associational standing through Sweet—a previously available argument that Defendants are making for the first time on a motion to reconsider, even though the time to raise such an argument is before, not after, the underlying motion is decided. And the Court cannot conclude that this absence of evidence means that it was erroneous for the Court previously to have concluded that Plaintiffs had shown the Tennessee NAACP's associational standing sufficiently for purposes of the Underlying Motion.

[11] To the extent that the argument was first presented in Defendants' motion for a stay of the Preliminary Injunction Order filed a day after the Preliminary Injunction Order was issued and a day before the Motion was filed, that makes no difference. Either way, the argument was not raised before the Underlying Motion was decided as it should have been. And the sole substantive basis for the motion to stay was essentially that the Court should reconsider its ruling regarding the associational standing of the Tennessee NAACP.

had timely made the more general argument that no Plaintiff had associational standing does not change the fact that the particular argument Defendants are now making (with some granularity) was ignored by Defendants. And it is this argument that is at issue here. Due to its tardiness, the Court denies the Motion on which it is based.

      B. *Alternatively, even if the Court were to consider Defendants' tardy arguments, it still would deny the motion for reconsideration.*

Even if the Court had not concluded that the Motion should be denied out of hand as based entirely on a new argument previously available, it still would deny the Motion.

To begin with, the Court does not perceive that Defendants are arguing error in the Court's prior ruling that standing had sufficiently been shown based on the record as it existed then. Instead, they are arguing that the record as it exists *now* shows that such finding should not have been made. In other words, in arguing for reversal of the Court's prior finding of standing, Defendants assert (a) less that the Court erred based on what was before it when ruling on the Underlying Motion, and (b) more that the finding should be changed now based on the current record as a whole as it exists now, including new information and argument not available to the Court when it decided the Underlying Motion.

   Specifically, Defendants argue first that the entire record as it exists today fails to show that Sweet has standing in his own right, and indeed shows affirmatively that he did not have standing. In considering the merits of this argument, the Court notes that since the filing of the Motion, the parties have submitted additional evidence for the Court to consider. (Doc. Nos. 86-1,

86-2, 93-1, 93-2, 98, 100-1).[12] And Defendants also rely on certain information, the authenticity of which the Court does not dispute, identified as located on the Internet. (Doc. No. 97 at 5 n.4).

As noted, Defendants' argument is based on the record as it exists at this time. In making their argument, Defendants rely both on new evidence (and information) they have submitted and on declarations newly filed by Plaintiffs. (*E.g.*, Doc. No. 100 at 2 n.2; Doc. No. 97 at 4-5; Doc. No. 88 at 2-4). The Court will assume *arguendo*, for purposes of this alternative analysis that presumes *arguendo* that Defendants' argument is cognizable, that all such new evidence and information is properly considered on the Motion. The Court does so even though that it seems clear that some of it could have been previously submitted by Defendants in the exercise of reasonable diligence and thus actually is not properly before the Court on a motion to reconsider.[13] To the extent this additional evidence or information, including a second declaration of Corey Sweet (Doc. No. 86-2), affects the Court's analysis, the Court will so indicate below.

Defendants argue primarily that Sweet lacks standing of his own because of his (alleged) ineligibility to vote absentee, which, Defendants claim, means that he has no injury traceable to the first-time voter requirement (since he would have to vote in-person irrespective of that

---

[12] Plaintiffs submitted Doc. Nos. 86-1 and 86-2 in response to the Motion to Dismiss, but they are part of the record in this case, and so the Court will consider them in addressing *arguendo* what the record as it stands today shows about the Tennessee NAACP's associational standing. Indeed, Defendants themselves rely heavily on Corey Sweet's second declaration filed at Doc. No. 86-2, essentially asserting that its filing has backfired on Plaintiffs by disproving that Sweet has standing. (Doc. No. 97 at 4-5). As it turns out, this is an assertion the Court rejects for the reasons set forth below.

[13] For example, take the declaration filed by Defendants with their "sur-response" to establish that Sweet did not register to vote until May 14, 2020. (Doc. No. 100-1). This information surely was available to Defendants before the Court issued the Preliminary Injunction Order just as it was available to them after the Court issued its Order.

requirement). (Doc. No. 88 at 4). Defendants have clarified that what they are really saying is that Sweet was not eligible to vote absentee *as of the date that is relevant for purposes of standing*, which Defendants claim is May 1, when the original complaint was filed in this case (Doc. No. 97 at 4 n.2; Doc. No. 100 at 2). In asserting that Sweet was ineligible to vote absentee as of May 1, Defendants rely largely on the apparent fact that Sweet is not going to be "out of the county" during the early voting period or on election day, for college or otherwise—a fact that Defendants say defeated his eligibility to vote absentee as of May 1. (Doc. No. 97 at 4-6).[14] Defendants also rely on new evidence showing that Sweet did not even register to vote until May 14, 2020. (Doc. No. 100 at 2 n.2 (citing Doc No. 100-1 at 2)).

Although it is true that standing is assessed under the facts existing when the complaint is filed, *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004) and *Cleveland Branch, N.A.A.C.P. v. City of Parma,* 263 F.3d 513, 524 (6th Cir. 2001), that principle does not help Defendants when all is said and done. Standing is a **claim-by-claim** inquiry. *Solis v. Emery Fed. Credit Union*, --- F. Supp. 3d ---, 2020 WL 2319718, at *5 (S.D. Ohio 2020). Standing is one aspect of the justiciability inquiry, and, because justiciability is a fundamental limitation on

---

[14] In its ruling, the Court credited Sweet's statement that if he had to return to college (at Xavier University in Louisiana) in person, rather than taking his classes remotely from Shelby County, he could not afford to come home to Shelby County just to vote. (Doc. No. 79 at 20). Defendants say that Sweet's statement in this regard makes no difference because Xavier did not start classes until August 17, 2020, early voting started on July 17th, and the election was August 6th. (Doc. No. 97 at 6-7). In other words, Defendants argue that Sweet *could* have voted in the August election in person, either by early voting or on election day. As with other new evidence presented by Defendants in connection with the Motion, the Court questions whether, but assumes *arguendo*, that this information (regarding when Xavier started classes) is "newly discovered evidence not previously available." But again, if it was so important to dissect Sweet's first declaration and stack it up against other known facts, why did not Defendants do so prior to the Court issuing its Opinion?

the scope of the judicial power, the inquiry as to justiciability must necessarily be on a claim-by-claim basis. *Id.* "We determine standing for each plaintiff on a claim-by-claim basis; 'standing is not dispensed in gross.'" *Price v. Medicaid Director,* 838 F.3d 739, 746 (6th Cir. 2016) ("It is black-letter law that standing is a claim-by-claim issue." (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008))); *Brian A. v. Bredesen*, No. 3:00-0445, 2009 WL 3415212, at *2 (M.D. Tenn. Oct. 15, 2009) (explaining that standing is a "claim-by-claim issue").

The Supreme Court has expressly directed that Article III standing must be measured claim by claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)."[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press*,*" and "standing is not dispensed in gross." *Id.* The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the *particular claims* asserted. *Id.* "We have insisted, for instance, that a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (internal quotation marks and citations omitted), *cited in In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015).

Since standing is to be assessed specifically with respect to each individual claim, it would seemingly follow that standing as to a particular claim should be assessed based on the timing of the filing of that claim—and not on the timing of different claims that were brought previously. And this in fact is the case: plaintiffs have standing to assert only the claims they had standing to assert when the claims themselves were first pled. *Price,* 838 F.3d at 746*; see also Rosen v. Tenn. Comm'r of Fin. & Admin.,* 288 F.3d 918, 928 (6th Cir. 2002). This means, among other things, that when a claim is first asserted in an amended complaint, the question as to that claim is whether standing existed as of the time of the filing of the amended complaint. *Price,* 838 F.3d at 746.

The claim at issue on this Motion, Plaintiffs' challenge to the first-time voter requirement, was not a part of the original complaint filed May 1, 2020. (*See* Doc. No. 1).[15] This claim (hereinafter, "Claim V") was not before the Court until June 12, 2020, when Plaintiffs filed their Amended Complaint, which included a (new) claim challenging the first-time voter restriction. (Doc. No. 39). Therefore, the relevant date upon which to judge standing as to Claim V is June 12, 2020, even if other claims should be judged based on how things stood on May 1, when the original complaint was filed.

The current record, including all of the newly filed evidence, reflects that on the pertinent date of June 12, 2020, the following facts were true as to Sweet: (1) he was registered to vote (Doc. No. 100-1); (2) he was allowed to vote absentee (regardless of his college status) under the then-existing injunction order of the Davidson County Chancery Court that effectively allowed all registered Tennessee voters to vote absentee, which was entered on June 4, 2020,[16] and not

---

[15] This claim's omission strikes the Court as a sign not of carelessness or conniving game-playing by Plaintiffs or their counsel, but rather as an appropriate tailoring of claims (to be appreciated by those who see the value of conserving the Court's and litigants' resources) based on the circumstances faced by Plaintiffs at the time. In particular, when Plaintiffs filed their initial complaint on May 1, the complaint sought, via Claim I, to enjoin enforcement of the State's eligibility criteria. If and when Plaintiffs succeeded on Claim I, all registered Tennessee voters would become eligible to vote absentee. So if Plaintiffs were to succeed on Claim I, they would not have needed an injunction barring the enforcement of the first-time voter requirement, as such relief would actually be redundant of the relief obtained on Claim I. Thus, Claim I would have rendered all Tennessee voters eligible to vote absentee, and success on a claim providing that eligibility for a subset of Tennessee voters (*i.e.*, first-time Tennessee voters) would have merely overlapped (for that subset) with the relief obtained on Claim I. Plaintiffs were within their rights to concentrate their efforts (and their adversary's and the Court's time and attention) solely on Claim I without pursuing also the alternative, more limited relief portended by a successful challenge to the first-time voter requirement.

[16] *Fisher v. Hargett,* No. 20-0435-III, Davidson County Chancery Court.

overturned until August 5, 2020;[17] (3) he was a first-time voter (Doc. No. 78-8 at ¶ 4); and (4) he wanted to vote absentee because of COVID-19 (*Id.* at ¶ 5).

Defendants argue that Sweet's most recent declaration (Doc. No. 86-2)[18] shows that he can no longer vote absentee because he no longer will be "out of the county" (because he transferred from Xavier to University of Memphis) and he has not asserted that he is especially vulnerable to COVID-19. These are *present* facts regarding his eligibility to vote absentee,[19] however, not facts as they existed on June 12, 2020. Defendants also contend that Sweet has no present threatened injury, arguing that an alleged injury "simply did not exist" after Sweet's move back home to Shelby County, which Defendants appear to believe occurred after June 12. (Doc. No. 88 at 4).[20] But between the time the Davidson County Chancery Court issued its injunction and the time that injunction was overturned—a period that includes June 12—Sweet had an alleged injury from the first-time voter requirement because he was a first-time voter who could otherwise vote absentee

---

[17] *Fisher v. Hargett*, 604 S.W. 3d 381 (Tenn. 2020).

[18] Defendants' claim that reliance upon Sweet's original declaration was erroneous is not persuasive given the volume of evidence, including additional declarations, produced by both sides in this case. Given the current state of the record, Defendants have not shown any prejudice in this regard.

[19] These present facts would also not change anything about the facts that existed at the time of the filing of the original complaint, the time Defendants claim (incorrectly) governs the assessment of standing.

[20] The Court cannot tell when this physical relocation supposedly took place; neither Sweet nor Plaintiffs specifically say. Nor can the Court tell for certain when Defendants say it took place. In context, Defendants clearly are relying solely on Sweet's declaration for the proposition that Sweet moved back to Shelby County. (Doc. No. 88 at 3, 4). But that declaration says only that Sweet transferred from Xavier University to the University of Memphis in mid-to-late July and that he "was at home in Shelby County" on August 18. (Doc. No. 86-2 at 3). Defendants appear to assume, and the Court accepts *arguendo*, that the move took place at the time of Sweet's July transfer to University of Memphis and no later than August 18.

(based on that injunction). That threatened injury, for purposes of his standing, is considered as of the time this claim was filed (June 12th), not at the present time, and standing "does not have to be maintained throughout all stages of the litigation." *Cleveland Branch, NAACP,* 263 F.3d at 524.

Defendants contend that Plaintiffs "cannot manufacture jurisdiction by amendment," citing to *Lynch v. Leis*, 382 F.3d 642 (6th Cir. 2004). The Court does not disagree with this proposition as far as it goes, but it is imprecise and inapplicable in this case. The proposition refers to the fact that amendment to a complaint cannot be used to manufacture jurisdiction for a claim stated in the original complaint. It does not mean that a complaint cannot be amended to add a claim that, as discussed above, will then be individually assessed as to subject-matter jurisdiction based on the time of its filing.

In *Lynch*, the court found that the relevant complaint for purposes of the plaintiff's standing was the complaint which added him as a party. "Therefore, the operative complaint is the one adding Powers to the action." *Id.* at 647. And *Lynch* is cited in *Price* for the proposition that plaintiffs have standing to assert only the claims they had standing to assert when the claims themselves were first pled. *Price*, 838 F.3d at 746. In other words, where an amendment adds a claim, the claim thereafter is assessed on its own for subject-matter jurisdiction (including standing). There is not even any potential issue as to whether such amendment was used to manufacture jurisdiction for that claim; far from being mistaken for a way to manufacture jurisdiction for the claim pled via the amendment, the amendment actually does the opposite, creating the issue of jurisdiction as to that claim in the first place.

In another case cited by Defendants, the court stated that "amendment may not create subject matter jurisdiction when none exists . . . it may not create an entirely new jurisdictional basis to provide competence in a court which lacked authority over the case *ab initio*." *In re*

*Katrina Canal Breaches Litig.*, 342 F. App'x 928, 931 (5th Cir. 2009) (internal quotation marks and citations omitted). Here, the Court has not addressed whether the Plaintiffs had standing "*ab initio*," at the time this lawsuit was filed.[21] The Court specifically did not need to reach that issue in denying the Underlying Motion with regard to claims that (unlike Claim V) were brought in the original complaint. And there was no "first-time voter" claim over which to even assert jurisdiction at the time of the original complaint. Claim V was not part of the original complaint but instead was a new claim as to which standing had to be established—and the Court treated it as just that, recognizing that the amendment *created* the issue of jurisdiction for Claim V rather than *solving* it for Plaintiffs. In summary, Defendants have not shown that the Amended Complaint in this case was brought "to manufacture jurisdiction."

As noted, Defendants claim not only that Sweet lacks personal standing, but also that he has not been shown to be a member of the Tennessee NAACP. But Defendants have not shown any basis for the Court to reconsider its previous ruling on this issue. The declarations newly filed by Plaintiffs only strengthen the Court's conclusion that Sweet likely is a member of the Tennessee NAACP. Specifically, consistent with the inference drawn by the Court in its Opinion, Plaintiffs thereafter filed declarations of Sweet and his grandmother, asserting, with what appears to be personal knowledge and adequate credibility, that Sweet is in fact a member of the Tennessee

---

[21] For example, the Court did not address in its Opinion whether any of the organizational Plaintiffs had "organizational" (*i.e.,* "direct") standing on its own—that is, whether it suffered an injury-in-fact (through impediment to their missions or diversion of resources) that was traceable to the State and would be redressed by a decision herein.

NAACP. (Doc. Nos. 86-1 at 2; 86-2 at 3).[22] Defendants have shown no grounds for the Court to revisit that ruling.

For these reasons, even if this Court could countenance, on a motion to reconsider, Defendants' new argument challenging the standing of the Tennessee NAACP via Sweet's own standing, and even if it did take into account all new information as desired by Defendants, it would decline to reverse its finding of standing. The record as it stands supports the finding that Sweet had standing as of the time his claim was first asserted, June 12. Assuming *arguendo* that reconsideration of the standing issue would be appropriate, the Court nevertheless would not change its ruling that the Tennessee NAACP has standing. It might be fair to say that the Court in that instance would have *reconsidered* the issue and indeed have employed a somewhat different analysis of Sweet's personal standing based on new evidence and argument. But it would have reached the same result, albeit for a somewhat different reason: the Tennessee NAACP has established standing on Claim V based on, *inter alia*, the standing of its member, Sweet, as of the time Claim V was filed, June 12, 2020. So the Motion would have afforded Defendants no relief in any event because Defendants have not carried their burden to show that the Court's prior order should be changed on reconsideration.

## II. Constitutionality of the first-time voter requirement.

Defendants also contend (again) that the first-time voter requirement is not unconstitutional. They rely on the assertion that Sweet's new declaration shifts the balance under

---

[22] As indicated in a footnote above, it is fair to say that none of the declarations filed by Plaintiffs specifically addresses whether Sweet was a member of the Tennessee NAACP at any time prior the execution of the declaration—including June 12, a date that predates the execution of all those declarations. The significance, or lack thereof, of this fact for purposes of the instant Motion is discussed in the footnote above.

the *Anderson-Burdick* framework, whereby the Court analyzes the burden at issue, considers the State's justifications for the restrictions, and assesses whether the State's restrictions are constitutionally valid given the strength of its proffered interests. (*See* Doc. No. 79 at 24). Defendants claim that, based on Sweet's new declaration,[23] the alleged harms to Sweet, upon which the Court relied, "do not exist." (Doc. No. 88 at 5). Again, the question is not whether the alleged harms exist at this time. Plaintiffs have sufficiently shown that, at the relevant time, June 12, 2020, as explained above, the alleged harms existed. Sweet was a first-time voter who had registered to vote via mail, and he was eligible and wanted to vote absentee. The analysis and balancing of the *Anderson-Burdick* factors has not changed, and the Court will not change its prior Preliminary Injunction Order for that reason or in that regard.

## CONCLUSION

For these reasons, Defendants' Motion to Reconsider (Doc. No. 87) is **DENIED**.[24]

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[23] The Court again fails to see how the information in Sweet's declaration upon which Defendants rely is "newly discovered evidence not previously available" or "evidence which could have been previously submitted in the exercise of reasonable diligence." *See* standards for motions to reconsider, above.

[24] In light of the rulings herein, and the fact that Defendants have not asserted that Claim V is moot (Doc. No. 100 at 3), the Court need not address Plaintiffs' argument that Claim V is justiciable despite any alleged mootness.