IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, THE EQUITY ALLIANCE, FREE HEARTS, THE MEMPHIS AND WEST TENNESSEE AFL-CIO CENTRAL LABOR COUNCIL, THE TENNESSEE STATE CONFERENCE OF THE NAACP, SEKOU FRANKLIN, and KENDRA LEE, <br><br> Plaintiffs, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his Official capacity as Coordinator of Elections for the State of Tennessee, and AMY WEIRICH, in her official capacity as the District Attorney General for Shelby County, Tennessee, <br><br> Defendants. | Case No. 3:20-cv-00374 <br> Judge Richardson <br> Magistrate Judge Frensley |

## EMERGENCY MOTION FOR A STAY PENDING APPEAL

Defendants, Tre Hargett, in his official capacity as secretary of State of the State of Tennessee, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, and Amy Weirich, in her official capacity as the District Attorney General for Shelby County, Tennessee, move this Court to stay its September 9, 2020 preliminary injunction pending Defendants' appeal.

### BACKGROUND

Plaintiffs, two individual voters and five organizations that engage in voter outreach activities, filed their complaint on May 1, 2020. *See generally* Compl., DE 1. In their complaint,

they challenged several Tennessee laws relating to absentee voting. *See id.* at PageID# 8–13, 30–31. Six weeks later, on June 12, 2020, Plaintiffs filed an amended complaint and a motion for a preliminary injunction. *See generally* Am. Compl., DE 39; Mot. for Prelim. Inj., DE 40. In that complaint, Plaintiffs added a challenge to Tenn. Code Ann. § 2-2-115(b)(7)—the provision at issue here. *See id.* at PageID# 129–30, 148–49. That provision requires that first-time voters who registered to vote by mail appear in person to provide "satisfactory proof of identity." *See* Tenn. Code Ann. § 2-2-115(b)(7)(A). Plaintiffs argued that this requirement "severely burdens the fundamental right to vote" and asked this Court to enjoin its enforcement. Am. Compl., DE 39, PageID# 149; Mem. in Supp. of Mot. for Prelim. Inj., DE 40, PageID# 1679–85.

On September 9, 2020, this Court granted Plaintiffs' request and issued a preliminary injunction prohibiting the State from enforcing its requirement that first-time, mail-registered voters appear in person to provide proof of their identity. *See* Prelim. Inj. Order, DE 80. The next day, Defendants filed a motion to stay the injunction pending resolution of their motion to dismiss Plaintiffs' claims for lack of standing. *See* Mot. to Stay, DE 83. And a day after that, Defendants filed a motion to reconsider the injunction order. *See* Mot. to Reconsider, DE 87. This Court denied both motions. *See* Mem. Op. Denying Mot. to Reconsider, DE 103; Order Denying Mot. to Stay, DE 107. Defendants now seek a stay of the injunction pending appeal.

## ARGUMENT

When confronted with a motion to stay an order granting injunctive relief, courts in this Circuit consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Graveline v. Johnson*, 747 F. App'x 408, 412 (6th Cir. 2018) (quoting *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). No single factor is

2

Case 3:20-cv-00374   Document 109   Filed 10/05/20   Page 2 of 15 PageID #: 2795

dispositive—instead, they must be "balanced together." *See Granholm*, 473 F.3d at 244. Here, taken together, these factors weigh in favor of granting State Defendants' motion.

## I. The State is Likely to Succeed on the Merits in its Appeal.

To obtain a preliminary injunction, Plaintiffs were required to prove both a substantial likelihood of standing to seek an injunction, *see Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 254–56 & nn. 3–4 (6th Cir. 2018), and a substantial likelihood of success on the merits of their claims, *see Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). Yet Plaintiffs proved neither. Defendants, then, are likely to succeed on the merits of its appeal for three reasons. First, because Plaintiffs lack standing. Second, because the preliminary injunction rested on a flawed application of *Anderson-Burdick*. And third, because the preliminary injunction failed to give proper weight to the resulting harms to the State and the public interest.

### A. Plaintiffs lack standing.

Federal courts are powerless to grant a preliminary injunction unless a plaintiff proves "a substantial likelihood of establishing" Article III standing. *Waskul*, 900 F.3d at 256. To carry this burden, a plaintiff must prove three elements: (1) an injury in fact that is (2) fairly traceable to the challenged action of the defendants and (3) redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Organizational Plaintiffs "must follow these same black-letter rules." *Waskul*, 900 F.3d at 255. Indeed, any other approach "would make a mockery" of the Supreme Court's standing jurisprudence. *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). This Court's conclusion that Plaintiffs have standing cannot be squared with these "black-letter rules." *Id.*

In issuing the preliminary injunction, this Court concluded that one Organizational Plaintiff—the Tennessee Conference of the NAACP—had "associational standing." *See* Mem. Op., DE 79, PageID# 2596, 2600. The Court based this conclusion on that organization's identification of single purported member: Corey Sweet.[1] *Id.* To be sure, a single identified member may be enough to establish standing, *see Waskul*, 900 F.3d at 255, but that member must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016)). Plaintiffs have not made this showing. Even if Mr. Sweet will suffer an injury by being unable to vote by mail this November, that injury is not traceable to the challenged action of the Defendants and is not likely to be redressed by this Court's injunction.

Mr. Sweet alleges that the challenged law will prevent him from voting by mail in the coming election. To the extent that this is a cognizable harm at all, it is not attributable to the challenged law and thus will not be prevented by the preliminary injunction. This is because the challenged law requires first-time voters who register by mail to appear in person to provide "satisfactory proof of identity." *See* Tenn. Code Ann. § 2-2-115(b)(7)(A). In practice, this means that a first-time voter—even one who is otherwise eligible to vote by mail—may not cast their

---

[1] While Plaintiffs asserted that Mr. Sweet "is" a member of the NAACP after briefing on their preliminary injunction motion was closed, *see* Sweet-Love Decl., DE 86-1; Sweet Decl., 86-2, Plaintiffs made no such assertion when they filed the motion itself. In fact, neither the NAACP nor any of the other Organizational Plaintiffs submitted any declaration with the preliminary injunction motion identifying any "members" who would be affected by this statute. *See* Fed. R. Civ. P. 6(c)(2). Further, in his original declaration submitted as part of Plaintiffs' reply brief in support of their preliminary injunction motion, Mr. Sweet never asserts that he is a member of the NAACP—only that he has "occasionally" attended some "events" hosted by the NAACP. *See* Supp. Sweet Decl., DE 54-4, PageID# 2300. Finally, even if Mr. Sweet is currently a member of the NAACP, Plaintiffs have presented no evidence that he was a member at the time the Amended Complaint was filed—a failure fatal to the NAACP's claim of associational standing. *See Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004).

ballot by mail and must instead appear in person. *See id.* Mr. Sweet, however, is not eligible to vote by mail. He does not allege that he will be out of his county of residence, that he is hospitalized, ill, or otherwise unable to appear in person, or indeed that he falls within any of the categories of voters who are eligible to vote absentee. *See* Tenn. Code Ann. § 2-6-201. Nor does he allege that he has any underlying condition rendering him especially vulnerable to COVID-19, or that he is a caretaker of someone who does. So he is not eligible to vote absentee under the Tennessee Supreme Court's decision in *Fisher v. Hargett*, 604 S.W.3d 381 (Tenn. 2020). Thus, while it is true that Mr. Sweet cannot vote by mail in the coming election, this injury stems not from the challenged law, but from the State's other limitations on who is eligible to vote by mail. This failure to establish traceability also means that Mr. Sweet's alleged harm—the inability to vote by mail—will not be redressed by this Court's injunction. This means that Mr. Sweet lacks standing. And because this Court's finding of standing rested on Mr. Sweet alone, the preliminary injunction should not have been issued and Defendants are likely to prevail on appeal.

It is true, of course that a Plaintiff need not possess standing at every stage of litigation. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 426 (2013) (explaining that standing is assessed "as of the time the suit is filed"). But even if Mr. Sweet was eligible to vote absentee when the amended complaint was filed and so possessed standing at the commencement of suit, a second justiciability doctrine—mootness—dooms his claim. Mootness has often been described as "the doctrine of standing set in a time frame." *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). And the Sixth Circuit has recognized that while "[t]he doctrines of standing and mootness are similar," there is a "temporal distinction: standing applies at the sound of the starting gun, and mootness picks up the baton from there." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017). This means that a case "becomes moot—and therefore no longer a Case" or "Controversy for purposes of Article III—when the issues presented

5

are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)) (internal quotation marks omitted).

Mr. Sweet is no longer eligible to vote absentee and thus no longer has any "legally cognizable interest" in the outcome of this case. *See id.* Plaintiffs do not seriously argue otherwise. Far from arguing that Mr. Sweet is eligible to vote absentee, Plaintiffs suggest that whether he is eligible is of "no consequence." *See* Pls.' Resp. to Mot. to Reconsider, DE 92, PageID# 2698. Plaintiffs further insist that Mr. Sweet "remains harmed" by the challenged law because—even if he is not eligible to vote absentee now—he "does not know if he will be out of the county during the relevant period, will be ill (particularly given the ongoing COVID-19 crisis), will be called to jury duty, or will otherwise be eligible to vote absentee." *Id.* at PageID# 2702. But this sort of speculation, cannot save Plaintiffs' claims from mootness.[2] The "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quoting *McPherson v. Mich. High Sch. Athletic*

---

[2] Perhaps recognizing the weakness of these arguments, Plaintiffs preemptively argued that the mootness doctrine is inapplicable because their claims are capable of repetition yet evade review. *See* Pls.' Resp. to Mot. to Reconsider, DE 92, PageID# 2703–05. But for a party to invoke this narrow exception, that party must show that "(1) the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). And while the second prong of this analysis is "somewhat relaxed in election cases," *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005), the Supreme Court has "never held that a mere physical or theoretical possibility was sufficient to satisfy th[is] test." *Murphy*, 455 U.S. at 482. Thus, a plaintiff—even in the election context—must show that they are likely to be subjected to the same harm again. Plaintiffs here cannot make this showing. The harms they allege stem from COVID-19—a "once-in-a-century pandemic." *See Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 930 (6th Cir. 2020). And if Mr. Sweet votes in person in the November 2020 election, then he will no longer be subject to the first-time voter requirement in any subsequent elections. Plaintiffs, then, cannot show that they are likely to suffer the same alleged harms again in the future. *See Tigrett v. Cooper*, 595 F. App'x 554, 557–58 (6th Cir. 2014) (concluding that plaintiffs were unlikely to suffer the same harm again where the alleged harms stemmed from a consolidation election—something that may "not occur again for another half-century").

*Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (en banc)). Here, Mr. Sweet is not eligible to vote absentee in the November election. This Court's preliminary injunction did not change this fact. And, as a result, it made no "difference to the legal interests of the parties." *See id.*

Because the preliminary injunction rested on the standing of a single member of a single Organizational Plaintiff, Plaintiffs' standing rises or falls with that member's entitlement to relief. Mr. Sweet does not have standing. And even if he did at one time, his claim is now moot. Thus, under either of these doctrines, Plaintiffs' claims are nonjusticiable and their request for injunctive relief should have been denied.

> **B. The preliminary injunction rested on a flawed application of *Anderson-Burdick*.**

In issuing the preliminary injunction, this Court correctly recognized that Plaintiffs' claims should be analyzed under the Supreme Court's *Anderson-Burdick* framework. *See* Mem. Op., DE 79, PageID# 2600. Under that framework, the level of scrutiny courts apply to an election law depends on the severity of the burdens it imposes. Severe restrictions on the right to vote must be narrowly tailored to advance a compelling state interest. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). But "reasonable, nondiscriminatory restrictions" are usually justified by "the State's important regulatory interests" in conducting orderly elections. *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). And when the burden on voting rights is "moderate," courts "must weigh that burden against the precise interests put forward by the State as justifications for the burden imposed by its rule" and determine whether the State's interests outweigh that burden. *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020) (internal quotation marks omitted).

This Court concluded that the burden imposed by the challenged law was moderate. *See* Mem. Op., DE 79, PageID# 2609, 2621. This conclusion, however, overstates the burden on Plaintiffs' right to vote. Because there is no right to vote absentee, *see, e.g.*, *Mays*, 951 F.3d at

7

792 (citing *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807–09 (1969)), the alleged burden must be evaluated in light of "all available opportunities to vote," *id.* at 785. And here, any burden on Plaintiffs' right to vote from the first-time voter requirement could be avoided altogether by voting in person either during the 15-day early voting period or on election day. *See* Tenn. Code Ann. §§ 2-3-201, 2-6-102. Because Plaintiffs have these other readily available means of exercising their right to vote, the burden on their rights is minimal at most. *See Mays*, 951 F.3d at 792.

But in any event, because this Court determined that the burden on Plaintiffs' right to vote was moderate, this Court continued on and weighed Plaintiffs' alleged burdens against the State's asserted interests. But while this Court invoked the correct test, given its assessment of the alleged burden, and engaged in the required balancing analysis, this Court's ultimate decision gave no consideration to the State's evidence establishing its anti-fraud justification for the first-time voter requirement. Instead, this Court determined that Defendants asserted only three interests: "(1) complying with NVRA Section 20505(c) and HAVA Section 21083; (2) effectuating congressional intent that states impose a first-time voter restriction and (3) effectuating congressional intent that first-time, mail-registered voters show identification." *Id.* at PageID# 2623. And this Court went on to note that Defendants made no attempt to argue that the challenged law "helps preserve the integrity of the voting process by somehow contributing to the detection of voter fraud." *Id.* at PageID# 2628.

But Defendants did, in fact, argue that the challenged law furthers the State's interest in the "integrity of [the] election process" and the prevention of fraud. *See* Defs.' Resp. to Mot. for Prelim. Inj., DE 46, PageID# 1791–92. More specifically, Defendants explained that "legislative conditions imposed upon those voting by mail are necessary because 'the purity of the ballot is more difficult to preserve when voting absent than when voting in person.'" *Id.* at 1792 (citing

8
Case 3:20-cv-00374   Document 109   Filed 10/05/20   Page 8 of 15 PageID #: 2801

*Emery v. Robertson Cnty. Election Comm'n*, 586 S.W.2d 103, 108 (Tenn. 1979)). Defendants also pointed out that the Tennessee Supreme Court has "expressly recognized that the integrity of the ballot is jeopardized upon violation of *any* of the 'procedural safeguards' that the General Assembly has included in the election laws." *Id.* at PageID# 1791 (emphasis added) (citing *Foust v. May*, 660 S.W.2d 487, 489 (Tenn. 1983)). These safeguards "are obviously designed to (1) prevent undue influence or intimidation of the free and fair expression of the will of the electors or (2) to insure that only those who meet the statutory requirements for eligibility to vote cast ballots." *Id.*

What is more, Defendants supported this argument with sworn declarations. Tennessee's Coordinator of Elections, Mark Goins, warned in his declaration that "Plaintiffs' requested relief could reduce the integrity of the election process." Goins Decl., DE 46-1, PageID# 1827. This is because, he explained, while "[i]n-person voting easily facilities the checking of voter identification and, thus, aids in the prevention of fraud," absentee voting, "by its nature," "deprives the State of the ability to efficiently verify a voter's identity." *Id.* Coordinator Goins further pointed out that "no proof of identity is required under Tennessee's absentee voting laws." *Id.* Because this proof is not required, "a voter could fraudulently fill out and sign a voter registration form and an absentee application using the same information." *Id.* And if a voter does this, "the signatures will match, and that voter will receive a ballot without the State ever having an opportunity to verify that voter's identity"—a scenario that can lead to "ghost voting." *Id.* This risk means that it is crucial for the State to verify the identity of would-be absentee voters. And for first-time voters, the State does so by requiring those voters to appear in person.

The bottom line is that the State has well-settled interests in the integrity of its election process. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality opinion) (recognizing that "[t]here is no question about the legitimacy or importance of the State's

9

interest in counting only the votes of eligible voters"). And as courts have recognized time and again, those interests underlie and justify limitations on access to absentee ballots. *See, e.g.*, *Foust*, 660 S.W.2d at 489; *Emery*, 586 S.W.2d at 108. This Court, however, failed to consider these interests and the evidence in the record in granting Plaintiffs' request for injunctive relief. *See* Mem. Op., DE 79, PageID# 2627–29.

### C. The preliminary injunction failed to give proper weight to the resulting harms to the State and the public interest.

The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). This emphasis stems from the recognition that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. And the closer the election, the greater the risk of confusion. *Id.* at 5.

In its preliminary injunction order, this Court recognized these very harms. It observed that "enjoining a state election law at this juncture could otherwise be deemed to cause some harm or negative impact to the State, and thus the public it serves." Mem. Op., DE 79, PageID# 2633. And this Court further acknowledged that "we may be considered to have reached the 'eve' of the November election." *Id.* at 2634. Still, this Court granted Plaintiffs' requested injunctive relief because it concluded that the "negative impact" that might result from the injunction "would be substantially attenuated" by two facts: first, that allowing first-time, mail-registered voters to vote by mail would not require the State to change its procedures; and second, that a considerable amount of time still exists for election officials to "adjust to this change and manage its consequences." *See id.* But these facts—even if they are true—do not eliminate the harm to the State and are irrelevant under *Purcell*.

The Supreme Court's instruction in *Purcell* stems from prudential concerns about judicial intervention in elections—more specifically, intervention when an election is looming. *See generally Purcell*, 549 U.S. at 4–5. What this means is that *Purcell* is not concerned with the possibility that the requested relief would be sound public policy or that it might not result in administrative difficulty. Indeed, as the Sixth Circuit recognized only months ago in denying a pre-election request for injunctive relief, "[i]t may well be that [Plaintiffs' requested relief] will prove workable. But [it] may also pose serious security concerns and other, as yet unrealized problems." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020). What matters under *Purcell*, then, is not whether the court or the parties believe the relief will be workable. What matters is that "the federal Constitution provides States—not federal judges—the ability to choose among many permissible options when designing elections." *Id.* The preliminary injunction here disregarded this principle and failed to give proper weight to the harm to the State and the public interest.

## II. The State and its Citizens Will be Irreparably Harmed Absent a Stay.

Defendants' likelihood of success on the merits is reason enough for this Court to stay its preliminary injunction. But in all events, the remaining stay factors confirm that a stay is warranted.

First, the State will be irreparably harmed without a stay of the preliminary injunction. The State always has a strong interest in enforcing its laws. And it is well settled that the State's sovereignty is irreparably harmed anytime action taken by its democratically elected leaders is enjoined. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citation omitted). It follows that in the election context, enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . would seriously and irreparably harm" the State. *Abbott*, 138 S. Ct. at 2324; *see also Little v.*

*Reclaim Idaho*, 140 S. Ct. 2616, 2617 (2020) (Roberts, C.J., concurring) ("[T]he State is likely to suffer irreparable harm absent a stay. Right now, the preliminary injunction disables Idaho from vindicating its sovereign interest in the enforcement of initiative requirements that are likely consistent with the First Amendment.").

Second, the preliminary injunction—if allowed to remain in effect—will harm the public interest as well. Both the Supreme Court and the Sixth Circuit have recognized that while the preliminary-injunction analysis usually entails consideration of the harm to the opposing party and a weighing the public interest, these two factors "merge when the Government is the opposing party." *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *11 (6th Cir. June 9, 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). This means that all of the harms to the State caused by the preliminary injunction—voter confusion, reduced election integrity, and a loss of certainty in election results, to name just a few—will extend to the public too.

The shared harms to the State and the public interest are rendered even more acute by the proximity of the November election. *See Republican Nat'l Comm.*, 140 S. Ct. at 1207 (citing *Purcell*, 549 U.S. at 1). This is because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. And as the Sixth Circuit has recognized, "rewriting a state's election procedures or moving deadlines rarely ends with one court order." *Thompson*, 959 F.3d at 813. The risk of confusion, then, is high and will only increase as the election draws nearer. *Purcell*, 549 U.S. at 5.

At bottom, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Id.* at 4. A stay would promote confidence in the State's electoral system by ensuring that all voters are bound by the State's legislatively enacted rules. The Supreme Court has repeatedly underscored the importance of leaving the management

of elections to the States. Indeed, since March of this year, the Supreme Court has reviewed at least seven emergency motions stemming from district-court injunctions of state election laws. And in six of those cases, the Court has stayed the injunction or declined to vacate a stay issued by the circuit court.[3] This Court should follow suit and should stay the preliminary injunction.

## CONCLUSION

In sum, the State is likely to succeed on the merits of its appeal, the State and its citizens will suffer irreparable harm unless a stay is issued, and the balance of harms and the public interest weigh in favor of a stay. For these reasons, this Court should stay its September 9, 2020 Order granting a preliminary injunction pending resolution of the State's appeal.

---

[3] *See Clarno v. People Not Politicians Or.*, No. 20A21, --- S. Ct. ---, 2020 WL 4589742 (U.S. Aug. 11, 2020) (mem.) (granting stay of district court's injunction relaxing Oregon's requirements for ballot initiatives); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020) (mem.) (granting stay of district court's injunction relaxing Idaho's rules for ballot initiatives); *Merrill v. People First of Ala.*, No. 19A1063, --- S. Ct. ---, 2020 WL 3604049 (U.S. Jul. 2, 2020) (mem.) (granting stay of district court's injunction of Alabama's photo-ID and witness requirements for absentee voting); *Tex. Democratic Party v. Abbott*, 140 S. Ct. 2015 (2020) (mem.) (denying application to vacate Fifth Circuit's stay of district court's injunction requiring Texas to implement no-excuse absentee voting); *Thompson v. DeWine*, No. 19A1054, --- S. Ct. ---, 2020 WL 3456705 (U.S. June 25, 2020) (mem.) (denying application to vacate Sixth Circuit's stay of district court's injunction relaxing Ohio's citizen-initiative and ballot-access requirements); *Republican Nat'l Comm.*, 140 S. Ct. at 1208 (granting stay of district court's injunction requiring Wisconsin to count late-postmarked absentee ballots for primary election).

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ *Matthew D. Cloutier*
JANET M. KLEINFELTER (BPR #13889)
Deputy Attorney General
Janet.kleinfelter@ag.tn.gov

ANDREW B. CAMPBELL (BPR #14258)
Senior Assistant Attorney General
Andrew.campbell@ag.tn.gov

ALEXANDER S. RIEGER (BPR #029362)
Assistant Attorney General
Alex.rieger@ag.tn.gov

MATTHEW D. CLOUTIER (BPR #036710)
Assistant Attorney General
Matt.cloutier@ag.tn.gov

Office of the Tennessee Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-7908

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| William L. Harbison | Danielle Lang |
| Lisa K. Helton | Ravi Doshi |
| Christopher C. Sabis | Molly Danahy |
| Christina R.B. López | Jonathan Diaz |
| Sherrard, Roe, Voigt & Harbison, PLC | Campaign Legal Center |
| 150 3rd Avenue South, Suite 1100 | 1101 14th Street NW, Suite 400 |
| Nashville, TN 37201 | Washington, DC 20005 |

Ezra Rosenberg
Pooja Chaudhuri
Jacob Conarck
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005


Date: October 5, 2020                             /s/ *Matthew D. Cloutier*
                                                  MATTHEW D. CLOUTIER
                                                  Assistant Attorney General