# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, et al., *Plaintiffs*, v. TRE HARGETT, et al., *Defendants*. | Civil No. 3:20-cv-0374<br><br>JUDGE RICHARDSON<br>MAGISTRATE JUDGE FRENSLEY |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY

On October 5, 2020—almost a month after the Court first enjoined Tennessee's First-Time Voter Restriction, Dkt. No. 79 ("Order")—Defendants filed this second "emergency" motion to stay the Court's injunction, Dkt. No. 109 ("Defs.' Mot."). The Motion, which follows a prior, narrower motion to stay that the Court rejected, *see* Dkt. Nos. 83, 84, 107, should be denied. First, this Court now lacks jurisdiction to stay its injunction in light of the Notice of Appeal Defendants filed in the Sixth Circuit on October 5, 2020. Dkt. No. 108 (Notice of Appeal). Second, even if the Court finds that it has jurisdiction to decide Defendants' Motion, a stay should still be denied because Defendants' arguments have already been considered and appropriately denied by this Court on multiple occasions. *See* Dkt. Nos. 79–80 (granting injunctive relief), 103 (denying Defendants' motion for reconsideration). Defendants have failed to show a strong likelihood of success on the merits, and have not shown that they will face irreparable harm absent a stay. Moreover, in the month that has passed since the Court first enjoined the First-Time Voter Restriction, first-time voters who registered to vote by mail or online have been eligible to vote by mail, have been informed of their right to do so by Plaintiffs, the State, and the media, and likely

1

many have requested to do so already. *See* Exs. 1–2 (Plaintiffs' declarations). A stay would thus create significant confusion among Tennessee voters, and is especially unwarranted in light of Defendants' failure to carry their burden of demonstrating a strong likelihood of success on the merits or irreparable harm.

## ARGUMENT

**I. This Court Lacks Jurisdiction to Enter Defendants' Requested Relief.**

In the Sixth Circuit, "[i]t is settled law that filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal." *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*, 71 F.3d 1197 (6th Cir. 1995); *Rucker v. U.S. Dep't of Labor*, 798 F.2d 891, 892 (6th Cir. 1986) (noting that the district court retains jurisdiction only if the "appeal is untimely, is an appeal from a non-appealable non-final order, or raises only issues that were previously ruled upon in that case by the appellate court"). This rule divests the Court of jurisdiction to rule on Defendants' Motion to Stay.

The Court's order enjoining the First-Time Voter Restriction—which Defendants now seek to stay—is an appealable interlocutory order under 28 U.S.C. § 1292(a). Dkt. No. 108. Defendants timely noticed their appeal of that order on October 5, 2020, *id.*, and thereafter filed their Motion to Stay, Dkt. No. 109. The Motion to Stay argues Defendants' likelihood of success on appeal and is necessarily related to the merits of the appeal now before the Sixth Circuit. *See infra* at Part II.A (explaining why Defendants are unlikely to succeed on the merits of their appeal). As such, the Notice of Appeal deprived the Court of authority to rule on Defendants' Motion to Stay, and should be denied. *See Doe v. Franklin County Children's Servs.*, 2020 WL 5642159, at *2 (S.D. Ohio

Sept. 22, 2020) (holding that the court had no jurisdiction to rule on defendants' motion to stay that was filed after they noticed an appeal of the court's order granting a preliminary injunction).

## II. Defendants' Motion to Stay Should Be Denied on the Merits.

"A stay is an intrusion into the ordinary processes of administration and judicial review," *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 220 (6th Cir. 2016), and is not a matter of right, "even if irreparable injury might otherwise result." *ProCraft Cabinetry, Inc. v. Sweet Home Kitchen & Bath, Inc.*, 343 F. Supp. 3d 734, 738 (M.D. Tenn. 2018). In weighing whether to exercise discretion to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). The party requesting a stay bears the burden of proving each of the four factors. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

### A. Defendants Have Not Made a Strong Showing That They Are Likely to Succeed on the Merits.

In their Motion to Stay, Defendants essentially urge the Court, for a second time, to reconsider its order enjoining the First-Time Voter Restriction. Defendants' Motion to Stay presents no new law, no new facts, and no new grounds of purported error that would counsel this Court to find now, on Defendants' third attempt, that an injunction of the First-Time Voter Restriction is not warranted. Defendants' arguments fail to make a "strong showing" that they are likely to succeed on the merits, which requires showing "not the bare possibility of success that exists in any case but, 'at a minimum, serious questions going to the merits.'" *ProCraft Cabinetry, Inc.*, 343 F. Supp. 3d at 739 (quoting *Dodds*, 845 F.3d at 221)); *see also Nken*, 556 U.S. at 434

3

(noting that to satisfy the first factor, "[i]t is not enough that the chance of success on the merits be 'better than negligible'"). Because Defendants fail to carry their burden of making a "strong" showing of likelihood of success on the merits, their Motion to Stay should be denied.

Defendants first argue that Plaintiffs lack standing to pursue the First-Time Voter Restriction because Organizational Plaintiff Tennessee NAACP's identified member, Mr. Sweet, (1) does not have standing, and (2) even if he did, his claim is now moot. *See* Defs.' Mot. at 7. This is not the first time Defendants have complained about Mr. Sweet's (who, importantly, is not a party to this litigation) and the Tennessee NAACP's standing. *See* Dkt. Nos. 46, 62, 82, 84, 88, 97, 100. Because Defendants' Motion to Stay does not raise any new arguments that had not been raised previously or addressed in their response to prior briefing on this exact issue, Plaintiffs incorporate by reference their prior arguments supporting standing. *See* Dkt. Nos. 54, 78, 92, 99. Plaintiffs also stand on the Court's well-reasoned and thorough opinions explaining why Tennessee NAACP has standing to allege claims on behalf of its members. *See* Dkt. Nos. 79, 103. For the third time, the Court should find that Tennessee NAACP has standing.

Defendants next argue (1) that the Court erred in finding that the burden imposed by the First-Time Voter Restriction is "moderate" for purposes of the *Anderson-Burdick* analysis,[1] and that (2) in conducting the *Anderson-Burdick* analysis, the Court did not properly weigh the State's "evidence" of its anti-fraud justification for the First-Time Voter Requirement. *See* Defs.' Mot. at 7–9. Defendants' arguments misread the Court's order granting the preliminary injunction, and ignore the significant attention the Court paid to exactly the arguments Defendants raise here in support of their stay motion.

---

[1] Notably, Defendants' Motion to Stay is the first time they are arguing that a standard lower than "moderate" should apply. *See* Order at 33 ("Defendants have not argued in favor of the standard lower than moderate—i.e., rational basis review—or indeed any standard at all with respect to this claim.").

4

First, in finding that the burden imposed is moderate, the Court explicitly considered—and rejected Defendants' interpretation of—the two cases Defendants cite in support of their stay motion, *Mays v. LaRose*, 951 F.3d 775, 784 (6th Cir. 2020) and *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807–09 (1969). *See* Order at 32–34. Moreover, the Court correctly rejected Defendants assertion that first-time voters "have these other readily available means of exercising their right to vote." *See* Order at 34 ("The record suggests that at least some first-time, mail-registered voters are currently prevented from voting in the manner (i.e., by mail) in which they must vote, as a practical matter, in order to vote at all, given their COVID-19-related concerns that remove voting in person as a viable option.").[2] Defendants' single paragraph arguing that the burden imposed is not moderate does nothing to displace the Court's legal and factual findings, and certainly does not demonstrate any likelihood of success on the merits, let alone a strong one.

Second, in conducting its *Anderson-Burdick* analysis, the Court properly weighed Defendants' asserted interest. *See* Order at 50–52. Defendants' only argument in support of the First-Time Voter Restriction was that it "do[es] *nothing more* than implement Congress's intent" in passing the National Voter Registration Act and the Help America Vote Act. *See* Dkt. No. 46 at 23 (emphasis added). The Court should not now consider Defendants' belated argument—made for the first time in this Motion to Stay—that they have an additional, fraud-related justification for the First-Time Voter Restriction. This is especially true as Defendants' arguments invoke only generalized (and unproven) claims about fraud in absentee voting, rather than raise specific concerns related to the First-Time Voter Restriction. *See* Defs.' Mot. 8–9. Nevertheless, even the generalized concern Defendants raise, that the First-Time Voter Restriction is justified because

---

[2] The Second Declaration of Corey Sweet provides further support to the Court's finding. *See* Dkt. No. 86-2. As Mr. Sweet testified, he did not vote in the August 2020 primary because of a combination of the First-Time Voter Restriction and his fear of exposure to COVID-19. *Id.* ¶¶ 6–7.

5

"no proof of identity is required under Tennessee's absentee voting laws" is no longer relevant, to the extent it ever was. Indeed, in implementing the Court's Order, the State created an identification requirement for first-time voters, thus alleviating even the generalized fraud-related concern raised in their Motion to Stay.[3] *See Information for First-Time Voters Who Registered by Mail*, Tenn. Sec'y of State, https://sos.tn.gov/products/elections/information-first-time-voters-who-registered-mail (last visited October 7, 2020).

Finally, Defendants argue that, in granting an injunction, the Court did not properly weigh the purported harms that would befall the State and the public's interest by a late change in the election rules. *See* Defs.' Mot. at 10–11 (citing, e.g., *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). The Court appropriately weighed—and rejected—application of the general principles outlined in *Purcell*. *See* Order at 56–57. More broadly, the Court's order has now been in place for a month and Defendants still fail to point to *any* evidence of (a) voter confusion, (b) difficulty in election administration, or (c) fraud as a result of the Court's order. Defendants' theory that their interests will be more than notionally harmed by an injunction has thus been put to the test and failed. By contrast, Defendants fail to recognize that granting a stay would *cause* voter confusion because Organizational Plaintiffs have already gone to great lengths to inform their members and constituents of the Court's order. *See infra* at Part II.C. To now turn around and require them to send a contrary message would result in inordinate confusion and disenfranchisement. *Id.*

Because Defendants fail to carry their burden of making a "strong showing" that they are likely to succeed on the merits, a stay of the injunction is not warranted.

---

[3] In creating an identification requirement for first-time voters who choose to vote absentee, Defendants exempted first-time voters who register to vote online (as opposed to by postal mail). *See id.* This exemption undercuts Defendants' argument that election integrity is harmed where first-time voters, who registered to vote by mail, vote absentee. If Defendants actually believed their own argument about the risk of fraud in absentee voting generally, and with respect to first-time voters specifically, there would presumably be no basis for treating mail and online registered first-time voters who choose to vote absentee differently.

6

## B. Defendants Have Not Demonstrated a Substantial Likelihood of Irreparable Injury.

Defendants argue that they will suffer irreparable harm absent a stay based only on a generalized claim that "the State's sovereignty is irreparably harmed anytime action taken by its democratically elected leaders is enjoined."[4] Defs.' Mot. at 11–12. But in so doing, they again fail to present any facts or evidence actually supporting their alleged grievances, and thus, fail to carry their burden of showing irreparable injury. *See Nken*, 556 U.S. at 435 (the party seeking a stay must show more than some "possibility of irreparable injury" to satisfy the second factor). For example, Defendants do not argue that voters are or will actually be confused by the *removal* of a requirement that reduced their voting options. *But see infra* at Part II.C (explaining that voters will actually be confused if a stay is issued). Nor do Defendants argue that there is any real risk of fraud if the First-Time Voter Restriction is not enforced. *See supra* at Part II.A (noting that the State has alleviated any claimed injury it might suffer from the Court's injunction by implementing an identification requirement applicable to some first-time voters who register to vote by mail). Under such circumstances, Defendants fail to carry their burden to demonstrate that they will suffer "more than a mere 'possibility' of irreparable harm." *See Husted*, 769 F.3d at 389 (denying the state defendants' motion to stay an election case pending appeal where defendants only "articulated a general concern" that the denial of a stay would harm the smooth and effective administration of election laws, but did not present any evidence or make any showing in support).[5]

---

[4] Taken to its logical conclusion, Defendants' argument is essentially that a state may never be denied a stay of an order enjoining its laws—and particularly its election laws—because such laws were enacted by the Legislature. Thankfully, the Sixth Circuit has implicitly rejected Defendants' position. *See, e.g.*, *Ohio State Conference of the NAACP v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014) (denying a motion to stay in the context of an election case).

[5] Defendants' argument of irreparable harm is further undercut by the fact that it was not raised in Defendants' *first* Motion to Stay the Court's injunction, which was filed on September 10, 2020, the day after the Court issued its order granting relief. *See* Dkt. No. 83. In fact, in that motion, Defendants did not raise *any* of the concerns they now raise now (other than as to Mr. Sweet's standing). Defendants' delay,

7

Case 3:20-cv-00374   Document 112   Filed 10/07/20   Page 7 of 10 PageID #: 2819

### C. Plaintiffs' Members—and the Public Generally—Will Be Actively Harmed by a Stay.

Contrary to Defendants' hypothetical claims of irreparable harm, Plaintiffs' members and engaged communities—as well as the public more broadly—will face substantial actual harm if a stay is issued. That is because in the month since the Court enjoined the First-Time Voter Restriction, voters have broadly been made aware of it, and some may have even relied on it.[6] First, Defendants have advertised the Court's order on the Secretary of State's website, which unequivocally states that "first-time voters are not required to vote in-person if they meet a legal reason to vote by-mail." *See, e.g.*, *Absentee Voting*, Tenn. Sec'y of State, https://sos.tn.gov/products/elections/absentee-voting (last visited Oct. 7, 2020). Likewise, Plaintiffs have also worked hard to advise their constituencies of the Court's order. For example, Plaintiff MCLC has reached some 500 voters, and explained to them that they can vote absentee regardless whether they are a first-time voter who registered to vote by mail or online. Ex. 1 ("MCLC Decl.") ¶ 2 (also noting that it would be effectively impossible to re-contact the informed voters to provide them with updated information if a stay is issued). Similarly, Plaintiff Tennessee NAACP has reached over 1,000 voters and provided the same information. Ex. 2 ("Tennessee NAACP Decl.") ¶ 4. Each organization has also taken additional steps to disseminate information

---

particularly in claiming irreparable harm from the Court's order, and the improper nature of their piecemeal requests for relief, further counsel against a stay.

[6] Indeed, voting in Tennessee is already underway. On October 7, 2020, Shelby County, the State's largest county, began mailing out absentee ballots to voters. *See* Kendall Downing, *First Absentee Ballots Hit the Mail from Shelby County Election Commission Ahead of November Election*, WMC5 (Oct. 7, 2020), https://www.wmcactionnews5.com/2020/10/07/first-absentee-ballots-hit-mail-shelby-county-election-commission-ahead-november-election/. Over 5,000 Shelby County voters in the county have already, or will soon, receive their ballot, *id.*, as will other voters across the state, including some who registered by mail and are voting for the first time. Notably, given that the State's voter registration deadline only closed on October 5, 2020—several weeks after the Court's order granting an injunction was entered—some first-time voters may also have chosen to register to vote by mail, rather than using another option, with the expectation that they would be able to vote by mail this Fall.

regarding the Court's order. *See, e.g.*, MCLC Decl. ¶¶ 3–4 (presenting information about the Court's order to meeting announcements, union meetings, and volunteer events); Tennessee NAACP Decl. ¶¶ 5–6 (describing information sharing at voter registration drives, phone banking campaigns, and virtual townhalls). The organizations report that voters will be deeply confused if a stay is issued. *See* MCLC Decl. ¶ 2; Tennessee NAACP Decl. ¶ 4. The likelihood of such confusion and actual harm to voters counsels strongly in favor of denying a stay, particularly when considered in contrast to Defendants' failure to show a likelihood of success on the merits or irreparable harm to the State.

## CONCLUSION

For the reasons articulated herein, in Plaintiffs' multiple prior briefs addressing the merits of Defendants' arguments, and most importantly, in the Court's well-reasoned opinions addressing each of Defendants' arguments in support of a stay, the Motion to Stay should be denied.

Dated: October 7, 2020

Respectfully submitted,

   */s William L. Harbison*

| | |
|---|---|
| Danielle Lang* | William L. Harbison (No. 7012) |
| Ravi Doshi* | Lisa K. Helton (No. 23684) |
| Molly Danahy* | Christopher C. Sabis (No. 30032) |
| Jonathan Diaz* | Christina R.B. López (No. 37282) |
| Campaign Legal Center | Sherrard, Roe, Voigt & Harbison, PLC |
| 1101 14th Street NW, Suite 400 | 150 3rd Avenue South, Suite 1100 |
| Washington, DC 20005 | Nashville, TN 37201 |
| Tel.: (202) 736-2200 | Phone: (615) 742-4200 |
| dlang@campaignlegalcenter.org | Fax: (615) 742-4539 |
| rdoshi@campaignlegalcenter.org | bharbison@srvhlaw.com |
| mdanahy@campaignlegalcenter.org | lhelton@srvhlaw.com |
| jdiaz@campaignlegalcenter.org | csabis@srvhlaw.com |
| | clopez@srvhlaw.com |

Ezra Rosenberg*
Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW Suite 900
Washington, DC 20005
Tel.: (202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

*Admitted Pro Hac Vice

**Certificate of Service**

I, Bill Harbison, certify, pursuant to Local Rule 5.01, that on this 7th day of October, 2020, the foregoing Opposition to Defendants' Emergency Motion to Stay was served via the Court's CM/ECF filing system on the following:

Janet Kleinfelter
Andrew B. Campbell
Alexander Rieger
Matthew D. Cloutier
Office of the Tennessee Attorney General
301 6th Ave. N.
Nashville, Tennessee 37243
janet.kleinfelter@ag.tn.gov
andrew.campbell@ag.tn.gov
alex.rieger@ag.tn.gov
matt.cloutier@ag.tn.gov

*Counsel for Defendants*

          */s William L. Harbison*