**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MEMPHIS A. PHILLIP RANDOLPH INSTITUTE, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 3:20-cv-00374** |
| | ) | **Judge Richardson/Frensley** |
| **TRE HARGETT, et al.,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Memphis A. Phillip Randolph Institute, The Equity Alliance, Free Hearts, The Memphis and West Tennessee AFL-CIO Central Labor Council, The Tennessee State Conference of the NAACP, and Sekou Franklin ("Plaintiffs") have filed a Motion for Attorneys' Fees. Docket No. 158. Plaintiffs have also filed a Supporting Memorandum and several supporting documents. Docket Nos. 159, 159-1 through 159-5. Tre Hargett, in his official capacity as Secretary of State of the State of Tennessee, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, and Amy Weirich, in her official capacity as the District Attorney General for Shelby County, Tennessee ("Defendants") have filed a Response in Opposition and a supporting document. Docket Nos. 163, 163-1. Plaintiffs have filed a Reply and a Notice of Supplemental Authority. Docket Nos. 164, 165. For the reasons set forth below, the undersigned recommends that Plaintiffs' Motion (Docket No. 158) be GRANTED.

## I. BACKGROUND

On May 1, 2020, Plaintiffs filed a Complaint challenging aspects of Tennessee's statutory provisions governing absentee voting. Docket No. 1. On June 12, 2020, Plaintiffs amended their Complaint to add a claim specifically challenging the requirement that voters vote in person in their first election if they registered to vote by mail or online (the "first-time voter claim"). Docket No. 39, p. 33. Plaintiffs alleged that among their members, there were first-time voters who registered by mail or online who wished to vote by mail due to the COVID-19 pandemic but could not do so under the provision. *Id.* at 13-14. Plaintiffs identified Tennessee NAACP member Corey Sweet as one such voter. Docket No. 51-1, p. 13-14, 44-46.[1] Plaintiffs also filed a motion to enjoin enforcement of the first-time voter provision. Docket No. 40. On September 9, 2020, this Court granted Plaintiffs' motion for a preliminary injunction with respect to the first-time voter claim. Docket Nos. 79, 80. Defendants filed a motion for reconsideration and for a stay of the injunction. Docket Nos. 83, 87. Both motions were denied. Docket Nos. 103, 107. Defendants appealed the grant of the preliminary injunction to the Court of Appeals for the Sixth Circuit and also moved for a stay pending resolution of the appeal. The Sixth Circuit denied the request for a stay, and the preliminary injunction remained in force for the November 2020 election. *See Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 567 (6th Cir. 2020). The Parties appear to agree that in that election, mail-in votes were almost certainly cast by first-time voters who had registered by mail or online. *See* Docket No. 163, p. 10.

On June 22, 2021, the Sixth Circuit vacated the preliminary injunction on the grounds that Mr. Sweet's (and thus NAACP's) first-time voter claim had become moot. *Memphis A.*

[1] In what appears to be a scrivener's error, Mr. Sweet was erroneously referred to as Corey Stewart. Docket No. 151-1, p. 13-14.

*Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 561 (6th Cir. 2021). Specifically, the Sixth Circuit found that:

> When plaintiffs filed their amended complaint on June 12, 2020, Sweet was eligible to vote absentee based on a June 4, 2020 state-court injunction of the first-time voter law, which construed Tenn. Code Ann. § 2-6-201(5) to permit "any qualified voter who determines it is impossible or unreasonable to vote in person at a polling place due to the COVID-19 situation" to vote absentee. *Fisher*, 604 S.W.3d at 392 (quoting Temporary Inj. Order, *Fisher v. Hargett*, No. 20-453-III (Tenn. Ch. Ct., 20th Jud. Dist. Jun. 4, 2020)). On August 5, 2020, the Tennessee Supreme Court vacated the June 4, 2020 injunction and imposed new, stricter guidelines. *Fisher*, 604 S.W. 3d at 405. Under the new guidelines, § 2-6-201(5) only includes individuals who have a "special vulnerability to COVID-19 [or] are caretakers for persons with special vulnerability to COVID-19." *Id.* at 393.
>
> After *Fisher*, Sweet no longer qualifies to cast an absentee ballot under Tenn. Code Ann. § 2-6-201. Sweet does not claim that he has a special vulnerability to COVID-19 or is a caretaker to someone who has a special vulnerability, only that he is concerned about the general risks of COVID-19.
>
> . . .
>
> Based on this updated information, it appears that Sweet no longer has an actual, ongoing stake in this litigation.

*Id.* at 558, *quoting Fisher v. Hargett*, 604 S.W. 3d 181 (Tenn. 2020).

Further, the Sixth Circuit found that "Sweet's alleged injury and the plaintiffs' motion for a preliminary injunction are inextricably tied to the COVID-19 pandemic, a once-in-a-century crisis" and thus, "[t]he unique factual situation of this case makes it one of the rare election cases where the challenged action is not capable of repetition." *Id.* at 560-61. Plaintiffs then dismissed their claims without prejudice, and this Court entered judgment on July 9, 2021. Docket Nos. 151, 155, 156. Pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.01(b), Plaintiffs filed the instant Motion to request an award of their attorneys' fees incurred

in securing and defending the preliminary injunction for the November 2020 election. Docket No. 159.

## II. LAW AND ANALYSIS

### A. Recovery of Fees

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless [of] whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). Therefore, courts do not award "fees to a prevailing party absent explicit statutory authority." *Buckhannon Bd. & Care Home v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (internal quotation marks and citation omitted). 42 U.S.C. §1988(b) provides that the prevailing party in an action to enforce civil rights under 42 U.S.C. § 1983 may recover "a reasonable attorney's fee as part of the costs" of litigation. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014). A prevailing party is one who "receive[s] at least some relief on the merits of his claim" that constitutes a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Buckhannon*, 532 U.S. at 603-04 (internal quotation marks and alterations in the original omitted).

"A plaintiff need not succeed on every claim in order to recover attorney's fees. Success on a single claim is sufficient to render it a prevailing party." *Tennessee State Conf. of the NAACP v. Hargett*, No. 3:19-cv-00365, 2021 WL 4441262, at *3 (M.D. Tenn. Sept. 28, 2021), *citing McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010). And, "if both the meritorious and unmeritorious claims arise out of a common core of facts, and involve related legal theories, a court should not exempt from its fee award the hours spent on the claims that did not succeed." *Id.*, *quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (internal quotation marks and citation omitted).

## B. <u>Prevailing Party Status</u>

While Section 1988(b) provides for the recovery of attorney's fees in a § 1983 case for one who is a "prevailing party," the determination of whether that title has been earned can be complex. "[L]itigation is not like a sport in which one can easily classify every match as a win, a loss, or a draw." *NAACP*, 2021 WL 4441262, at *3. This court recently described how such a determination may play out under very similar circumstances:

> [A] claim may be raised and litigated in such a tight time window—for example, in the runup to a fixed, irrevocable deadline, such as an election—that no party *ever* had a meaningful chance of obtaining a judgment in its favor. Rather, a typical plaintiff with a meritorious claim in such a case will merely obtain a preliminary injunction that remains in force for the period of time in which the plaintiff actually needs protection, only for the underlying claims, quite expectedly, to then become moot and be dismissed. In light of these complexities, the Sixth Circuit has endorsed a "contextual and case-specific inquiry" governing prevailing party status that, among other things, "does not permit [the court] to say that preliminary-injunction winners" who do not receive any judgment or further relief "always are, or never are, 'prevailing parties.'"

*Id.*, *quoting McQueary*, 614 F.3d at 600 (emphasis and alteration in original).

Additional guidance indicates that, in order to be considered a prevailing party, a plaintiff typically must have obtained a "material alteration of the legal relationship of the parties." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (internal quotation marks and citation omitted). Such alteration must be not only "court-ordered" and "material," but also "enduring." *McQueary*, 614 F.3d at 597-99. A material change is one that "directly benefited plaintiffs by altering how [the defendant] treated them." *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). An enduring change is one that "provided plaintiffs with everything they asked for" and which is "irrevocable." *Id.* "A plaintiff crosses the threshold to 'prevailing party' status by succeeding on

a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *McQueary*, 614 F.3d at 601.

Plaintiffs, who assert that they are "only seeking fees on the First Time Voter claim," contend that as to that claim, they are the prevailing party because they obtained "at least some relief on the merits of [their] claim." Docket No. 159, p. 3, n.1, *quoting Farrar*, 506 U.S. at 111 (internal quotation marks omitted; alteration in original). Plaintiffs argue that the preliminary injunction they received was material because it "constitutes court-ordered relief that changed the legal relationship between the parties to the direct benefit of Plaintiffs by prohibiting Defendants from enforcing the in-person voting requirement against Plaintiffs' members and other first-time voters during the pandemic." *Id.* at 4.

Plaintiffs further argue that the relief they obtained was enduring because "it provided Plaintiffs' members and other eligible Tennessee voters who registered online or by mail with the irrevocable opportunity to vote by mail in the November 2020 election during the height of the COVID-19 pandemic." *Id.* Plaintiffs contend that they obtained court-ordered relief that "endured until the case was mooted by the passage of time." *Id.* at 5, *quoting McQueary*, 614 F.3d at 599 (internal quotation marks omitted).

Additionally, Plaintiffs argue that they obtained enduring relief because "the benefit they secured through the preliminary injunction—the opportunity to vote [by mail] in the 2020 election, during which the COVID-19 pandemic presented a special burden on in-person voting—cannot be retroactively nullified, and is therefore irrevocable." *Id.*, *citing Miller*, 936 F.3d at 449. Finally, Plaintiffs assert that they obtained "court-ordered, material, enduring relief based on a determination that they were likely to succeed on the merits of their claim." *Id.* at 6, *citing* Docket No. 79, p. 55 ("Here, application of the applicable Anderson-Burdick framework,

in light of the current record, indicates that it is likely that Plaintiffs will prevail on their claim that the first-time voter requirement violates the First Amendment right to vote.").

Defendants disagree, arguing that "[w]hile Plaintiffs secured a preliminary injunction, it was only for purposes of the November 3, 2020, general election, and it was subsequently vacated by the Sixth Circuit," after which "Plaintiffs voluntarily abandoned their claims and moved to dismiss their case." Docket No. 163, p. 4-5. Thus, Defendants argue that the relief Plaintiffs obtained was neither enduring nor irrevocable. *Id.* Further, Defendants contend that Plaintiffs did not receive, in the language of *McQueary*, everything they asked for because they sought "not only preliminary- but also permanent-injunctive relief and a declaration that the first-time-voter provision is unconstitutional" but obtained "only a preliminary injunction—and just for the November 2020 general election." *Id.* at 7.

The Parties agree that Plaintiffs won a preliminary injunction that barred the State from enforcing its first-time voter provision during the November 2020 election and that absentee votes were likely cast as a result. Where they differ is their characterization of this victory. Defendants argue that ultimately "there was no permanent change in the State's ability to enforce its first-time-voter provisions" and that Plaintiffs are attempting to "conflate the irrevocability of the change in legal relationship between the parties [] with the 'irrevocable' nature of the votes that were cast absentee." Docket No. 163, p. 9-10. Plaintiffs contend that they "obtained relief from the first-time voter restriction during the general election held at the height of the COVID-19 pandemic. And a win is a win—regardless of whether the winner runs up the score." Docket No. 164, p. 2, *quoting Miller*, 936 F.3d 449-50 (internal quotation marks omitted).

The Court agrees. Here, the "contextual and case-specific inquiry" required by *McQueary* involves looking at the particular circumstances of the November 2020 general

election, held during the height of the COVID-19 pandemic, to which the Sixth Circuit found Plaintiffs' claims were "inextricably tied." *Memphis A. Phillip Randolph Inst.*, 2 F.4th at 560. The change secured by the preliminary injunction (the ability of first-time voters who registered by mail or online to vote absentee in the November 2020 general election) altered the relationship between the Parties for the purposes of that election and is irrevocable and enduring. Those votes can never be uncast. The fact that a permanent injunction was never granted and the preliminary injunction was later vacated has no effect on that reality. As this court recently held in similar circumstances, Plaintiffs "obtained more or less everything they wanted, except for the entry of a judgment, an order making permanent the preliminary relief that they had already received, and a declaration memorializing the reasoning that the court had already utilized." *NAACP*, 2021 WL 4441262, at *5. This change "directly benefited plaintiffs by altering how [the defendant] treated them." *Miller*, 936 F.3d at 448. Defendants' theory that Plaintiffs' relief must come in the form of a permanent injunction fails because Plaintiffs obtained irrevocable relief for the relevant election analogous to the marriage licenses in *Miller* that the State could not later nullify. *Miller*, 936 F.3d at 449. Similarly, the State cannot nullify the votes cast in the November 2020 election. "That is the success that the plaintiffs wanted, and they both got it and kept it. The plaintiffs' success, in other words, was, as required, court-ordered, material, and enduring." *Id.* For this reason, Plaintiffs are the prevailing party as to the first-time voter claim.

**C. <u>Reasonable Attorneys' Fees</u>**

**1. <u>Calculating the Lodestar</u>**

"A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing . . . in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation . . . that grants the successful civil rights plaintiff a

fully compensatory fee." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (internal citations omitted). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Known as the "lodestar" amount, this calculation provides an "initial estimate of the value of a lawyer's services." *Id.* This is not necessarily the end of the inquiry. After determining the lodestar amount, "the court *may* adjust the fee upward or downward to reflect relevant considerations peculiar to the subject litigation." *NAACP*, 2021 WL 4441262, at *3 (emphasis added), *quoting Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (internal quotation marks omitted). "But trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 563 U.S. at 838. "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection;" therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

**2. <u>Documentation</u>**

"The party requesting fees bears the burden to submit adequate documentation of the hours reasonably expended." *NAACP*, 2021 WL 4441262, at *6, *quoting Plumbers & Pipefitters Local No. 396 Combined Fund v. State Line Plumbing & Heating, Inc.*, No. 4:10-CV-1936, 2011 WL 1769085, at *2 (N.D. Ohio May 9, 2011) (internal quotation marks and citation omitted). A party seeking fees must provide "billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended." *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). "[A] plaintiff has an obligation to provide documentation that at least allows the court to make a general assessment of the reasonableness of the hours

claimed, in the context of ordinary conventions of attorney work logs." *NAACP*, 2021 WL 4441262, at *6.

Plaintiffs have submitted a chart indicating the number of hours worked by Plaintiffs' counsel and paralegals for which compensation is sought as well as the hourly rates of those professionals. Docket No. 159-1. These numbers are substantiated by Declarations supporting the reasonableness of the hours and rates claimed. Docket Nos. 159-2 through 159-5. According to Plaintiffs' calculations, their lodestar amount is $99,222.13. *Id.* Plaintiffs' counsel have also provided detailed billing records. Docket Nos. 159-2, p. 18-27; 159-3, p. 11-27; 159-4, p. 10-18. Defendants do not dispute the number of hours Plaintiffs' counsel claim to have worked on the case nor the reasonableness of their hourly rates. *See* Docket No. 163. Instead, Defendants argue that Plaintiffs' fee request should be reduced because "Plaintiffs' counsel have billed for an overstaffed legal team, unknown and vague activities that cannot be reviewed, hours expended after this matter became moot, and hours expended on appeal—where they ultimately lost." Docket No. 163, p. 11.

**3. <u>Defendants' Objections</u>**

**a) <u>Staffing</u>**

Defendants argue that "this case has been overstaffed since its inception." Docket No. 163, p. 12. Specifically, Defendants contend that only three lawyers performed "the lion's share of the work," while the hours spent by the other attorneys "were unnecessary, including multiple attorneys reviewing documents, participation in phone calls, and so on." *Id.* at 12-13. Defendants assert that Plaintiffs' fees "should be reduced by half for that reason alone." *Id.* at 13.

The Court has reviewed the documentation supplied by Plaintiffs. Docket Nos. 159-1 through 159-5. It does not appear that the number of attorneys and paralegals involved (twelve) is excessive for a case of this nature and complexity. Further, the Court agrees that delegating more time-consuming tasks to junior attorneys and paralegals (rather than highly experienced attorneys with their correspondingly high hourly rates) was a reasonable and cost-effective decision on the part of Plaintiffs. Unlike in the aforementioned recent similar case that was staffed by twenty-six legal professionals (*NAACP v. Hargett*), the Court finds that Plaintiffs' staffing level does not indicate redundancy or require a reduction in fees. *See NAACP*, 2021 WL 4441262, at *7 ("Ultimately, the court concludes that the sheer number of attorneys . . . involved in this litigation warrants a reduction from the lodestar amount.").

**b) <u>Adequacy of Documentation</u>**

Defendants contend that "a number of Plaintiffs' fee entries are simply unreviewable," as they state "emails" or "telephone conferences" without additional detail. Docket No. 163, p. 13. The Court disagrees. First, some of the entries that Defendants object to as vague indicate that in fact no fee is sought for that activity (i.e., it is claimed at 0% for $0.00). *See, e.g.*, Docket No. 163-1, p. 1, 5, 7. Next, most of the other entries identified have descriptions that appear to be adequate. *See, e.g.*, Docket No. 163-1, p. 1 (entry of .25 hours claimed for a lawyer to "participate in call with co-counsel re next steps re MAPRI v. Hargett"). To be sure, certain entries might benefit from some additional detail. *See, e.g., id.* at 2 ("Zoom with counsel; emails; review draft filings"). Yet, taking into account the relatively short amount of time associated with such entries as well as the overall context of the litigation, the Court does not find that these entries are vague to the point of evading review and necessitating a reduction in

fees. The Court is able to make "a general assessment of the reasonableness of the hours claimed." *NAACP*, 2021 WL 4441262, at *6.

**c) <u>Hours Related to Appeal or Occurring After August 5, 2020</u>**

Defendants assert that Plaintiffs are inappropriately claiming fees for hours billed after the case proceeded to appeal at the Sixth Circuit and after the case became moot. Docket No. 163, p. 11-12, *citing Fisher*, 604 S.W.3d 381 (decided on August 5, 2020). As to the first point, Plaintiffs contend that they "have not sought fees on the merits of the appeal" but that because "Plaintiffs *were* successful in defeating Defendants' emergency stay motion and that success was crucial to maintaining their relief for the November 2020 election," they are requesting fees "for that narrow set of activities on appeal." Docket No. 164, p. 4 (emphasis in original). The Court agrees that defeating the emergency stay motion was essential for Plaintiffs to "keep" the success they had won through the critical date of November 3, 2020. Therefore, the Court will not reduce fees on the basis that they were expended on defending the injunction.

As to the second point, Plaintiffs argue that "[t]he *Fisher* court did not address the issue of first-time voters and such a cutoff would make no sense given that the relief Plaintiffs won here concerned the November 2020 election." *Id.* Asserting that "during the height of the COVID-19 pandemic, the matter was certainly capable of repetition," Plaintiffs argue that the *Fisher* court held that "the matter was both moot *and* not capable of repetition yet evading review at the time of its [later] decision because the injunction was 'inextricably tied' to the COVID-19 pandemic and, by that time, recurrence was unlikely." *Id.* at 4-5, *quoting Memphis A. Phillip Randolph Inst.*, 2 F.4th at 560. The Sixth Circuit did indeed determine that "[a]fter *Fisher*, Sweet no longer qualifies to cast an absentee ballot under Tenn. Code Ann. § 2-6-201," and thus that his (and by extension, the NAACP's) claim was moot. Docket No. 146, p. 11-12.

Yet, Plaintiffs are correct that the *Fisher* court did not address the issue of first-time voters. *See Fisher*, 604 S.W. 3d 381. Further, given that the relief Plaintiffs sought concerned the November 2020 election, the fact that mootness was determined in June 2021 (after the election had taken place and votes were cast) cannot be said to have rendered legal services in the late summer and early fall of 2020 "per se unnecessary" even though they took place after the decision in *Fisher*. Thus, the Court finds that Plaintiffs are entitled to recover legal fees for dates up to the date of the November 2020 election.

## III. CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion (Docket No. 158) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**